TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-93-00271-CR








Julius Drew, Jr., Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 33,591, HONORABLE DONALD HAMMOND, JUDGE PRESIDING








 On a jury's verdict, the trial court convicted Julius Drew, Jr. of attempted capital
murder. Tex. Penal Code Ann. § 15.01, § 19.03(a)(1) (West 1994). (1) The jury made an
affirmative finding that Drew used or exhibited a deadly weapon in commission of the offense and
assessed punishment at ninety-nine years' imprisonment. The court sentenced him accordingly. 
Drew appeals. We will affirm the judgment of conviction.



JURY SHUFFLE


 In his first point of error, Drew asserts the trial court erred in granting the State's
request to shuffle the jury under article 35.11 of the Code of Criminal Procedure (2) without
conducting a Batson hearing. See Batson v. Kentucky, 476 U.S. 79 (1986). The State responds
that the procedures mandated in Batson for peremptory strikes do not apply to a jury shuffle.

 Under article 35.11, either the defendant or the State, upon timely request, has an
absolute right to have the names of the jury panelists shuffled. Yanez v. State, 677 S.W.2d 62,
69 (Tex. Crim. App. 1984). The purpose of article 35.11 is to ensure the compilation of a
random list of jurors. Jones v. State, 833 S.W.2d 146, 148 (Tex. Crim. App. 1992). 

 In Batson, the Supreme Court held that the State's use of peremptory strikes to
eliminate members of the defendant's race from the jury violates the defendant's right to equal
protection under the United States Constitution. Batson 476 U.S. at 84. In order to justify an
inference of purposeful discrimination under Batson, the defendant must establish: (1) he is a
member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to
exclude members of the defendant's race from the venire; and (3) the facts and circumstances raise
an inference of purposeful discrimination. Id. at 96; Henry v. State, 729 S.W.2d 732, 734 (Tex.
Crim. App. 1987). At this point, the burden shifts to the State to furnish a neutral explanation
for the challenges. Batson 476 U.S. at 96; Henry, 729 S.W.2d at 734.

 Drew urges this Court to adopt a similar procedure when the State requests a jury
shuffle. (3) Drew cites no authority to support his position, and indeed, the only appellate courts
that have addressed the point have refused to extend Batson to jury shuffles. See Wearren v.
State, 877 S.W.2d 545, 546 (Tex. App.--Beaumont 1994, no pet. h.); Urbano v. State, 808
S.W.2d 519, 520 (Tex. App.--Houston [14th Dist.] 1991, no pet.). We decline to extend Batson
procedures to a jury shuffle and overrule Drew's first point of error.



EVIDENCE OF UNADJUDICATED EXTRANEOUS OFFENSES


 In his second and third points of error, Drew asserts the trial court erred in allowing the State
to introduce evidence of two unadjudicated extraneous offenses during the punishment phase of
the trial in violation of article 37.07, section 3(a) of the Code of Criminal Procedure. The version
of article 37.07, section 3(a) in effect at the time of trial was as follows:



Regardless of the plea and whether the punishment be assessed by the judge or the
jury, evidence may, as permitted by the Rules of Evidence, be offered by the state
and the defendant as to any matter the court deems relevant to sentencing,
including the prior criminal record of the defendant, his general reputation and his
character. The term prior criminal record means a final conviction in a court of
record, or a probated or suspended sentence that has occurred prior to trial, or
any final conviction material to the offense charged.



Act of May 29, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492 (Tex.
Code Crim. Proc. Ann. art 37.07, § 3(a), since amended) (emphasis added). 

 At the punishment phase, Drew testified during direct examination that he would
comply with any conditions of probation that the court imposed, including committing no
offenses, avoiding injurious or vicious habits, and avoiding persons or places of disreputable or
harmful character. The trial court subsequently allowed the State to cross-examine Drew, over
defense counsel's objection, about Drew's use of cocaine and an incident in which Drew was
arrested because a passenger in his car was in possession of a stolen purse. Both incidents were
unadjudicated.

 Evidence of an extraneous offense is inadmissible in the punishment phase unless
the offense conforms to the definition of "prior criminal record" in article 37.07(3)(a). Grunsfeld
v. State, 843 S.W.2d 521, 523 (Tex. Crim. App. 1992). However, an accused who seeks to
establish that he can comply with the law if placed on probation has "opened the door" to rebuttal
evidence which may include proof of specific bad acts. King v. State, 773 S.W.2d 302, 303 (Tex.
Crim. App. 1989); Murphy v. State, 777 S.W.2d 44, 67 (Tex. Crim. App. 1988); cf. Ortiz v.
State, 834 S.W.2d 343, 346 (Tex. Crim. App. 1992). Drew argues that he did not "open the
door" to admission of unadjudicated offenses merely because he offered evidence to establish he
was eligible for probation. See Grunsfeld, 843 S.W.2d at 526 n.12. We disagree. Drew
indicated that he would be willing and able to abide by conditions of probation set by the court. 
He thus opened the door to evidence of unadjudicated offenses. We overrule Drew's second and
third points of error.

REMOVAL FROM THE COURTROOM


 In his fourth point of error, Drew contends that the trial court abused its discretion
in ordering his removal from the courtroom in the jury's presence. This occurred during the
State's closing argument in the punishment phase, after Drew repeatedly interjected comments
regarding his view of the evidence:



[Prosecutor]: There's another reason we need to send this man to prison for life,
and that is so that the next time somebody like him in Bell County, Texas, is
confronted by a police officer when they're doing something they shouldn't be
doing, when they're taking advantage of some poor defenseless woman at 1:00 in
the morning in a field on the south side of Temple or Killeen or Belton or Harker
Heights-- 


[Drew]: I believe she told Mark Jackson that--


[Prosecutor]: Hush!


[Drew]:--she was misled, too, didn't she?


[The Court]: All right.


[Drew]: He said it himself.


[The Court]: All right, Mr. Drew.


[Drew]: I had no reason to do any of that.


[The Court]: All right. Mr. Bailiff--


[Drew]: She misled him, and that's why we're here.


[The Court]: Take him out of the courtroom then.


[Drew]: Because if she didn't mislead him, we'd never be here, and he said it
himself.



 At that point, the bailiff apparently escorted Drew out of the courtroom. Defense
counsel objected to Drew's removal outside the jury's presence at the bench, stating:



Your Honor, I believe that prior to the defendant's conduct that there are certain
steps that should have been taken, and I urge the Court to reconsider, and I believe
the first step we should have done is to counsel him and caution him. The second
step is to gag him or shackle him. There are a variety of laws that are available
to the Court.



After excusing the jury, the court ordered Drew returned to the courtroom and informed him that
he could remain in the courtroom if he stopped making outbursts. Drew agreed to stop and
apologized. The jury returned, and the State continued its argument without further incident.

 Drew contends the trial court abused its discretion in removing him from the
courtroom without any warning. He argues further that his conduct was not extreme or repeated
so as to justify his removal.

 The Sixth Amendment guarantees a defendant the right to be present in the
courtroom at every stage of the trial. Illinois v. Allen, 397 U.S. 337, 338 (1970). "However, a
defendant can lose his right to be present at trial if, after he has been warned by the judge that he
will be removed if he continues his disruptive behavior, he nevertheless insists on conducting
himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot
be carried on with him in the courtroom." Id. at 343 (emphasis added).

 Although the trial court did not issue a warning before ordering Drew removed,
when defense counsel objected, the court immediately ordered Drew returned to the courtroom
where the court warned Drew that he would have to leave if he continued to interrupt the
proceedings. Thereafter, Drew apparently controlled his behavior and remained in the courtroom. 
Any error was cured. We overrule Drew's fourth point of error.



MOTIONS FOR NEW TRIAL


 In his ninth and tenth points of error, Drew asserts that the trial court erred in
denying two pro se motions for new trial, without an evidentiary hearing, based on alleged juror
misconduct and ineffective assistance of counsel. The State contends that the trial court was not
required to consider either of Drew's pro se motions for new trial because Drew was represented
by counsel at the time he filed the motions. The State argues that because the trial court did not
grant Drew the right to "hybrid" representation, his motions for new trial were nullities and,
therefore, no timely filed motion for new trial was pending before the court.

 An accused does not have the right to "hybrid" representation. Turner v. State, 805
S.W.2d 423, 425 n.1 (Tex. Crim. App. 1991); Landers v. State, 550 S.W.2d 272, 280 (Tex.
Crim. App. 1977); Webb v. State, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). Hybrid
representation is defined as representation partly pro se and partly by counsel. Landers, 550
S.W.2d at 280. The trial court need not consider pro se motions filed while the accused is
represented by counsel. Hazelwood v. State, 838 S.W.2d 647, 649 (Tex. App.--Corpus Christi
1992, no pet.); Busselman v. State, 713 S.W.2d 711, 714 (Tex. App.--Houston [1st Dist.] 1986,
no pet.); Froyd v. State, 628 S.W.2d 866, 867 (Tex. App.--Corpus Christi 1982), remanded on
other grounds, 633 S.W.2d 884 (Tex. Crim. App. 1982); see also Rudd v. State, 616 S.W.2d
623, 625 (Tex. Crim. App. 1981) (holding pro se briefs filed while appellant represented by
counsel present nothing for review). However, the trial court may permit hybrid representation. 
Webb, 533 S.W.2d at 784 n.2; see Phillips v. State, 604 S.W.2d 904, 908 (Tex. Crim. App.
1979). Although an accused may not require the trial court to consider pro se motions filed when
he was represented by counsel, the trial court has the power to consider such motions. Froyd, 628
S.W.2d at 867.

 In the present case, the trial court never ruled on Drew's motion for new trial "due
to ineffective counsel." The law did not require the trial court to consider his pro se motion;
consequently, we overrule his tenth point of error. Although not obligated to do so, the trial court
did rule on Drew's pro se motion for new trial due to juror misconduct, and its action overruling
the motion without holding an evidentiary hearing is subject to review.

 A hearing was held on June 29, 1993 in which Drew, who was represented by
counsel, personally addressed the court regarding a motion for recusal which was denied because
of its untimely filing. The trial court instructed Drew to speak only through his attorney. Drew
urged that his attorney be allowed to withdraw from his defense. The State's attorney pointed out
that the court would lose jurisdiction on the following day, and Drew was asked if he still wanted
his attorney to withdraw. Drew stated that he did not want his present attorney to represent him,
but he did not want to represent himself. The trial judge granted permission for Drew's attorney
to withdraw and said he would take into consideration the appointment of new counsel. The
motion for new trial based on juror misconduct was then overruled without a hearing.

 A defendant does not have an absolute right to a hearing on a motion for a new
trial. Reyes v. State, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). In fact, a hearing is not
required when the motion for a new trial addresses matters which can be determined from the
record. Id. at 816. The trial court is authorized to hear evidence by affidavit. Tex. R. App. P.
31(d). If the issue of jury misconduct may be addressed using the record, then the only remaining
issues are whether the trial court abused its discretion, and whether the error, if any, requires
reversal.

 The record reflects that the trial judge ruled on the motion for new trial based on
juror misconduct after considering the motion with an attached affidavit by Clarence Franklin and
the conflicting affidavit by Gloria Franklin, the juror accused of misconduct. In his affidavit,
Clarence Franklin, father of juror Gloria Franklin, alleges that Gloria knew that his tattoo of the
name "Jean" memorialized Clarence's relationship with Drew's mother, which ended in a broken
engagement over thirty-eight years ago. He also asserts that the Franklin family discussed
previous prosecutions against Drew and that Gloria knew the Drew family. Gloria's affidavit
categorically denies that she knew the tattoo referred to Drew's mother; that she knew Drew's
family; that her family discussed the trial in her presence; or that she harbored any ill feelings
toward Drew or his family.

 It is within the discretion of the trial judge to determine issues of fact regarding
juror misconduct. No abuse of discretion occurs when a trial judge merely considers conflicting
evidence and overrules a motion for new trial. Tollett v. State, 799 S.W.2d 256, 259 (Tex. Crim.
App. 1990); McCartney v. State, 542 S.W.2d 156, 162 (Tex. Crim. App.1976). A trial judge
is free to believe one juror's affidavit and disbelieve another's on the issue of jury misconduct. 
McCartney 542 S.W.2d at 162. The trial judge did not abuse his discretion in this case in failing
to conduct an evidentiary hearing on jury misconduct. We overrule Drew's ninth point of error.

 In his sixth, seventh, and eighth points of error, Drew asserts the trial court erred
in overruling his motion for new trial based on the Sixth and Fourteenth Amendments to the U.S.
Constitution; Article I, Section 10 of the Texas Constitution; and article 1.051 (a) and (c) of the
Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 1.051(a), (c) (West Supp. 1995). 
Drew cites Trevino v. State, 565 S.W.2d 938, 940 (Tex.Crim.App. 1978), for the proposition that
a defendant is entitled to assistance of counsel at a hearing on a motion for new trial because it
is a critical stage of the proceedings. However, in the cause at hand, there was never an
evidentiary hearing held on the motion for new trial.

 Because an evidentiary hearing was not held and for the reasons stated above
addressing Drew's ninth and tenth points of error, we also overrule his sixth, seventh, and eighth
points of error.



IMPROPER JURY ARGUMENT


 In his fifth point of error, Drew complains the trial court erred in overruling his
objection to the prosecutor's jury argument on punishment when the prosecutor incorrectly stated
the law as it related to probation revocation and parole. 

 The prosecutor stated the following during closing argument: 



The first thing you need to know is that the law in Texas provides that any
sentence you give Julius Drew today, he gets credit for every day he has spent in
prison up to this day and in jail awaiting trial. You also need to know that if in
some manner you decided that he should get 10 years and decided that you should
give him probation, and if after doing that, he violated the probation by using
drugs or violating the law or not working or doing any of the other things that law-abiding citizens do every day voluntarily without having been told to do them, in
the event you gave him 10 years and the Court revoked his probation and sent him
to prison, he'd never go back because 10 years divided by 3 is 3 and 4 months, and
he's already got 4 years credit. So if he gets 10 years, and it's revoked and he's
sentenced to 10, he's already satisfied that. He wouldn't go back to prison. And
I think back to what Mr. Ganne said---


[Drew's Attorney]: Excuse me, Your Honor. That's just absolutely incorrect. 
It's a misstatement of the law and I'd like to have the jury instructed that that is a
misstatement of the law.


[The Court]: Where is it a misstatement of the law?


[Drew's Attorney]: Well, he would go back to prison until he's paroled.


[Prosecutor]: Out at the jail, counsel, as you well know.


[Drew's Attorney]: That's not true, Your Honor. People who are charged with
aggravated offenses are not paroled and -- that's a misstatement of the law.



The trial court then overruled appellant's objection.

 The court's charge on punishment correctly explained the good conduct time and
parole law, including the fact that, "[e]ligibility for parole does not guarantee that parole will be
granted." A misstatement of the law, made in jury argument, that conflicts with the court's
charge is error. Burke v. State, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983).

 We must now determine whether the error is harmless in light of Texas Rule of
Appellate Procedure 81(b)(2). (4) In our analysis, we must calculate the probable impact of the error
on the jury by taking into consideration the entire record. Factors to consider include: (1) the
source of the error, (2) the nature of the error, (3) whether or to what extent the error was
emphasized by the State, (4) probable collateral implications of the error, (5) the weight a juror
would probably place upon the error, and (6) whether declaring the error harmless would
encourage the State to repeat it with impunity. Orona v. State, 791 S.W.2d 125, 130 (Tex. Crim.
App. 1990).

 In Drew's attorney's closing argument, he urged the jury not to sentence Drew to
over sixty years in prison, since any sentence over sixty years would be meaningless under the
parole system. The prosecutor, in his closing argument, depicted the hypothetical situation of
Drew receiving a sentence of ten years probation and what he mistakenly thought would happen
if Drew's probation was later revoked. Since the jury found that Drew used a deadly weapon in
the course of the offense, giving Drew probation was excluded as an option. See Act of May 30,
1977, 65th Leg., R.S., ch. 347, § 3f(a)(2), 1977 Tex. Gen Laws 925, 926 (Tex. Code Crim.
Proc. Ann. art. 42.12, § 3g(a)(2), since amended). Because probation was not an option, we
believe the prosecutor's hypothetical argument, about what would happen if Drew were sentenced
to only ten years and given probation that was later revoked, was so attenuated that it did not
influence the jury in the sentencing phase. Additionally, the jury had the advantage of having all
the correct information regarding parole when making their decision. We hold that the improper
jury argument was harmless error under the circumstances.



INEFFECTIVE ASSISTANCE OF COUNSEL


 Drew argues that his trial counsel rendered ineffective assistance by electing to go
to the jury for sentencing instead of the trial-court judge. Drew asserts that the maximum
sentence the judge could have imposed was fifty-years' imprisonment under North Carolina v.
Pearce, 395 U.S. 711 (1969). Before his conviction here, Drew was tried and convicted for the
same offense in two different trials. In his first trial, the jury assessed punishment at fifty-years'
imprisonment. This conviction was reversed on appeal. The second trial again resulted in
conviction, and the trial judge assessed punishment at fifty years. The second conviction was also
reversed. Drew v. State, 735 S.W.2d 655 (Tex. App.--Austin 1987, pet. ref'd); Drew v. State,
765 S.W.2d 533 (Tex. App.--Austin 1989), pet. dism'd per curiam, 805 S.W.2d 451 (Tex. Crim.
App. 1991). The instant appeal is from a third conviction resulting in a jury sentence of ninety-nine years. 

 The standard for evaluating the effectiveness of counsel at the punishment stage is
the "reasonably effective assistance" test under the Sixth Amendment stated in Ex Parte Duffy,
607 S.W.2d 507 (Tex. Crim. App. 1980), rather than the two-part test articulated in Strickland
v. Washington, 466 U.S. 668 (1984). Ex Parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App.
1991); Ex Parte Cruz, 739 S.W.2d 53, 58 (Tex. Crim. App. 1987). Under this standard, counsel
is charged with the responsibility of learning the law and the facts of the case, making an
independent investigation of the facts, and seeking out potential witnesses to interview. Duffy,
607 S.W.2d at 517; Flores v. State, 576 S.W.2d 632, 634 (Tex. Crim. App. 1978). We must
look to the totality of the representation to determine the sufficiency of counsel's assistance. The
right to counsel under the Sixth Amendment does not guarantee an error-free counsel or counsel
whose competency is judged by hindsight. Mercado v. State, 615 S.W.2d 225, 228 (Tex. Crim.
App. 1981). The appellant in an ineffective-assistance-of-counsel challenge has the burden to
demonstrate affirmatively through the record instances of counsel's alleged ineffectiveness. Cruz,
739 S.W.2d at 59.

 As in Jackson v. State, 766 S.W.2d 518 (Tex. Crim. App. 1988), the issue in this
case is whether the sole decision to have the jury impose the sentence instead of the judge
constitutes ineffective assistance of counsel. Drew relies on Pearce, 395 U.S. 711 (1969), and
Texas v. McCullough, 475 U.S. 134 (1986), for the proposition that a presumption of
vindictiveness applies here because there were no circumstances occurring since the last trial
which would justify an increased sentence. Thus, Drew argues, a judge would be obligated to cap
the maximum sentence at fifty years since that was the original sentence imposed. If a
presumption of vindictiveness is inapplicable to the facts at hand, the judge would not be limited
to the fifty-year sentence imposed by the original jury and the complaint of ineffective assistance
of counsel would fail. Jackson, 766 S.W.2d at 521.

 The instant case was tried by a different trial judge than the judge in Drew's first
two convictions. It would be pure conjecture to presume that the trial judge here had a personal
stake in the previous convictions or that the trial judge acted out of vindictiveness towards the
appellant. Jackson, 766 S.W.2d at 521; see also Chaffin v. Stynchcombe, 412 U.S. 17, 27
(1973). Even if the Pearce presumption applies, it remains within the discretion of the trial judge
to increase the sentence if, based on the defendant's conduct since the time of the original
sentence, objective reasons justified an increased punishment. The record shows Drew's bond
was forfeited when he and his attorney failed to appear for a trial setting. Drew's bond forfeiture
and his admitted cocaine abuse constitute objective circumstances that make the Pearce
presumption of vindictiveness inapplicable. See Jackson, 766 S.W.2d at 522. Under the Duffy
test, Drew has failed to prove ineffective assistance of counsel. We therefore overrule appellant's
eleventh point of error.

 For the reasons stated above, we affirm the trial-court judgment. 



 John Powers, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: March 15, 1995

Do Not Publish

1.   The offense took place before September 1, 1994, and is
governed by the law in effect at the time the offense was
committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993 Tex.
Gen. Laws 3586, 3705. Because the code amendments effective
September 1, 1994, are irrelevant to this appeal, the current code
is cited for convenience.
2.   Article 35.11 provides: 


The trial judge, on the demand of the defendant or his
attorney, or of the State's counsel, shall cause a
sufficient number of jurors from which a jury may be
selected to try the case to be randomly selected from the
members of the general panel drawn or assigned as jurors
in the case. The clerk shall randomly select the jurors
by a computer or other process of random selection and
shall write or print the names, in the order selected, on
the jury list from which the jury is to be selected to try
the case. The clerk shall deliver a copy of the list to
the State's counsel and to the defendant or his attorney.


Tex. Code Crim. Proc. Ann. art. 35.11 (West Supp. 1995).
3.   At trial, Drew's counsel objected to the State's request
for a jury shuffle, alleging that the State's objective was to move
five black venirepersons out of the strike zone. Defense counsel
established on the record that [all five] of the black
venirepersons were seated in the first twenty chairs. The trial
court overruled the objection and shuffled the jury.
4.   Rule 81(b)(2) states: "If the appellate record in a
criminal case reveals error in the proceedings below, the appellate
court shall reverse the judgment under review, unless the appellate
court determines beyond a reasonable doubt that the error made no
contribution to the conviction or to the punishment." Tex. R. App.
P. 81(b)(a).