Vernon Walter ROBERTS, Appellant,

v.

The STATE of Texas, State.

No. 2–83–440–CR.

Court of Appeals of Texas, Fort Worth.

Dec. 20, 1984.

Steve H. Swander, Price & Swander, Forth Worth, for appellant.

Tim Curry, Dist. Atty., and David K. Chapman, Asst. Dist. Atty., Fort Worth, for State.

Before ASHWORTH, BURDOCK and HILL, JJ.

## OPINION

HILL, Justice.

Vernon Walter Roberts appeals from his conviction by a jury of the offense of murder. Upon his plea of true to an enhancement paragraph, the trial court assessed his punishment at 62 years in the Texas Department of Corrections. Roberts presents seven grounds of error.

By grounds of error numbers one and two, Roberts complains that the trial court erred in not instructing the jury as to the lesser included offenses of involuntary manslaughter and criminally negligent homicide.

We reverse and remand for trial because we find that Roberts was entitled to have the jury instructed as to the lesser included offenses of involuntary manslaughter and criminally negligent homicide.

In determining whether a charge on a lesser included offense is required, a two-step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is not guilty of the alleged offense but is guilty only of the lesser included offense. *Salinas v. State*, 644 S.W.2d 744, 745 (Tex.Crim.App.1983). The fact that the evidence is controverted or conflicts with other evidence in the case is not to be considered in determining whether an instruction on a lesser included offense should be given. *See Hobson v. State*, 644 S.W.2d 473, 477 (Tex.Crim.App. 1983). When evidence from any source, including the defendant's own testimony, raises the issue of a lesser included offense, and there is testimony that, if guilty at all, the defendant is only guilty of the lesser included offense, then the charge on the lesser included offense must be submitted to the jury, assuming the charge is properly requested or its omission properly objected to. *Hunter v. State*, 647 S.W.2d 657, 658 (Tex.Crim.App.1983). It is then the jury's duty, under the proper instruction, to determine whether the evidence is credible and supports the lesser included offense. *See Hobson*, 644 S.W.2d at 477.

Since involuntary manslaughter requires a lesser culpable mental state on the part of the defendant, it is by definition a lesser included offense of murder. *Brooks v. State*, 548 S.W.2d 680, 683 (Tex. Crim.App.1977). *See* TEX.CODE CRIM. PROC.ANN. art. 37.09 (Vernon 1981). Criminally negligent homicide is, in turn, a lesser included offense of involuntary manslaughter. *Ormsby v. State*, 600 S.W.2d 782, 784 (Tex.Crim.App.1979).

The distinction between involuntary manslaughter and criminally negligent homicide is simply one of degree. *Salinas*, 644 S.W.2d at 746. Involuntary manslaughter occurs when a person recklessly

causes the death of another, TEX.PENAL CODE ANN. sec. 19.05(a)(1) (Vernon 1974); criminally negligent homicide occurs when a person causes the death of another by criminal negligence, TEX.PENAL CODE ANN. sec. 19.07 (Vernon 1974). A person acts with "recklessness" when he or she "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur"; a person acts with "criminal negligence" when he or she "ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX.PENAL CODE ANN. sec. 6.03(c) & (d) (Vernon 1974). In *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App. 1975), the Texas Court of Criminal Appeals distinguished the two, as follows:

> Reckless conduct ... involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk. Criminal negligence ... involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof. At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk.

In *Moore v. State*, 574 S.W.2d 122, 123 (Tex.Crim.App.1978), the Court reemphasized that the difference between "recklessness" and "criminal negligence" lies in whether the defendant perceives the risk of harm which his conduct creates.

On April 27, 1979, after five years of marriage, Wanda Roberts left the appellant, Vernon Roberts, and moved into an apartment. Vernon kept calling her on the telephone and she became terribly frightened. She kept a loaded shotgun at her apartment and carried a pistol in her purse.

During mid-May, Vernon and Wanda played golf together and they spent the weekend of May 24th through 27th together. At the conclusion of the weekend, Wanda sent Vernon a letter asking him not to contact her again. Between Monday night and Tuesday morning, Wanda received some more phone calls and called the police. According to the officer, Wanda was afraid and very upset. Following his conversation with Wanda, the officer began looking for Vernon.

Wanda went to work the next day at Lisa Motor Lines, where her uncle, Jerry Johnston, also worked. Johnston saw Vernon that day. Vernon was very upset, wanting to know why Wanda would not see him. He expressed his determination that Wanda would see him. Johnston observed a handgun on the floorboard of Vernon's pickup, a .357 magnum revolver which Vernon had purchased at a pawn shop near Lisa Motor Lines that same day. The revolver was a double-action model which could not be discharged just by dropping it on the floor.

At approximately 12:30 p.m. on May 29th, Officer J.D. Christian of the Fort Worth Police Department went to Lisa Motor Lines to answer a domestic disturbance call. He spoke to Wanda and listened in on a telephone call between her and a "male voice." He heard the voice threaten to "get" Wanda and kill her. The voice threatened to "come down there" to kill her. Wanda was very upset.

The following Sunday morning, June 3, 1979, Wanda was sitting on her apartment porch when Vernon drove past. She became extremely afraid and went inside the apartment. As she and her daughter were talking in the bedroom, the apartment door crashed in and Vernon entered the bedroom with a pistol in his hand. The daughter, Lee Ann Little Solomonson, rolled off the bed onto the floor. While she was on the floor, Lee Ann was not able to see whether Wanda or Vernon had a gun, but she heard them tell one another to "put down the gun." She was able to see that Vernon put his gun on the floor in front of him. She then sat up, but upon seeing Vernon reach for his pistol, she lay back down. When she did that, she could see that Vernon's pistol was no longer on the floor. She remained crouched behind the bed.

She could hear Vernon saying, "Wanda, do you love your daughter?" Wanda replied, "Yes, I do." Vernon then said, "I am going to count to three and I am going to start shooting at that bed." Vernon counted "one, two," and then there was a gunshot. Lee Ann got up after the gunshot and began hitting Vernon over the head with the telephone. She was shot in the chin. Although she did not see Vernon shoot her, he was the only one with a pistol in front of her.

Later, when she came to, Lee Ann heard Wanda moan. The telephone did not work, but Lee Ann got help by going to the front door and telling a passerby that she had been shot and needed help.

Wanda's body was subsequently found in the bedroom closet. There was a shotgun underneath her and a .38 caliber bullet beside her. The bullet was one capable of being fired from a .357 magnum pistol. Wanda had been shot twice in the upper chest at a range of six to twelve inches by a gun firing a bullet over .30 caliber. The lower of these wounds caused her death a few minutes after the shot was fired.

Vernon drove into the emergency entrance of Harris Hospital at approximately 10:00 a.m. on the morning of the offense, his clothes covered with blood. He could not walk without support. He told a nurse that he had been shot and that the police were after him because he had killed a couple of people.

Vernon testified that he went to the apartment to talk to Wanda and to trade his pistol for her shotgun. He related that he had the pistol in his pocket and that he threw it on the floor when the deceased asked him to give it to her. He said she was holding a shotgun at the time. He shot Wanda while they were struggling over possession of his pistol after she had shot him with the shotgun. He said that he did not have any intention of harming her.

The jury was instructed on the defense of accident and asked to decide if Roberts was guilty of murder, guilty of voluntary manslaughter or not guilty.

Under these facts, the jury could have disbelieved Roberts' testimony that he did not mean to point the gun at the deceased, but believed his testimony that he did not intend to hurt her. In that event, the jury could infer that Roberts acted recklessly, as defined, in struggling with the deceased over the gun. Alternatively, even though Roberts had a lot of experience with guns, the jury could have inferred from the facts that the circumstances developed quickly in such a way so as to cause him not to be aware of the risk of death to the deceased.

Since there is evidence to raise the issues of involuntary manslaughter and criminally negligent homicide, we hold that the jury should have been charged accordingly. *Lugo v. State*, 667 S.W.2d 144, 147–49 (Tex. Crim.App.1984).

The State relies on the opinions of *Simpkins v. State*, 590 S.W.2d 129 (Tex.Crim. App.1979) and *Brooks v. State*, 548 S.W.2d 680 (Tex.Crim.App.1977). The opinions in both of these cases, as they relate to the evidentiary requirement for the submission of these lesser-included offenses, were disapproved by the Court of Criminal Appeals in *Lugo*, 667 S.W.2d at 147.

On appeal, appellant has urged five other grounds of error. Since one or more of the same questions may arise during a new trial of the same case, we will discuss appellant's grounds of error three through seven.

In ground of error number three, Roberts urges that the trial court erred by denying his request to use Lee Ann's prior statement for impeachment. Where a witness for the State has made a report or has given a statement prior to testifying, the defendant, after a timely and specific motion, is entitled to inspect and use such prior and available report or statement for cross-examination and impeachment purposes, and this right obtains even though the witness has not used the instrument to refresh his memory. *Zanders v. State*, 480 S.W.2d 708, 710 (Tex.Crim.App.1972). This

has been called the "Gaskin Rule." *See Gaskin v. State*, 172 Tex.Cr.R. 7, 353 S.W.2d 467 (1962).

 Lee Ann had given an oral statement to a prosecutor. The statement was taped and later transcribed. Lee Ann never listened to the tape or read the transcript, nor did she utilize either to prepare for the trial. The trial court granted Roberts access to the tape but denied a subsequent request for the transcript. Lee Ann's statement consisted of the oral statements she made to the prosecutor, as preserved by the tape recording. We do not reach the question as to whether the production of such a tape recording is required by the "Gaskin Rule," because Lee Ann's statement in the form of the tape recording was produced for Roberts for use in cross-examination. If the production of the tape was required by the "Gaskin Rule," the requirement was met when the tape was produced for Roberts' benefit. Roberts complains of the trial court's failure to allow him the use of the State's transcription of the tape. We hold that the purpose of the "Gaskin Rule" was met by allowing Roberts access to the tape. Roberts cites no authority requiring the State to produce a transcription, which is a third person's version of the witness' statement, rather than the statement itself. Roberts has not shown that he was prevented from producing his own transcription of the tape. Further, Roberts had the responsibility to request that the transcript be placed in a sealed envelope and forwarded to this court for examination on appeal. By his failure to do so, Roberts did not preserve his error. *Lewis v. State*, 481 S.W.2d 804, 805 (Tex. Crim.App.1972). He did forward a tape to us, but a tape is not what he was denied at trial. We overrule ground of error number three.

Roberts asserts in ground of error number four that the trial court erred by not allowing him to recall one of his witnesses for the purpose of explaining a mistake in her testimony.

Eloise Ray, a defense witness, testified at trial that Lee Ann had told her after the shooting that, "Buddy didn't intend to hurt my mother. If she hadn't shot him with a shotgun nothing would've ever happened." On cross-examination, she testified that Buddy Roberts told her that he shot Lee Ann because she was hitting him with the telephone. On redirect, Roberts' attorney asked if there were any possibility that maybe Lee Ann or someone else made the statement. She responded, "No, there is no question in my mind because I was there." On recross-examination, she stated that there was no question in her mind that Buddy told her he shot Lee Ann because she was hitting him with the phone. She was excused as a witness following her testimony. After the court recessed for the day, Vernon called her and told her that he never made that statement. As a result of that conversation, she was offered as a witness by Vernon Roberts so that she might testify that it was Lee Ann, not Vernon, who had told her that Vernon had shot Lee Ann because she was hitting him over the head with the telephone.

 The law vests with the trial judge the discretion to allow or refuse the testimony of a person who has not been summoned as a witness, but who has been influenced by the statement of witnesses. In the absence of abuse of discretion, the ruling of the trial court in allowing or refusing such testimony will not be disturbed. *Harris v. State*, 163 Tex.Cr.R. 183, 289 S.W.2d 605, 606 (1956). In this case Eloise Ray, as a witness who had been excused, was either a witness, to whom the witness rule still applied, or she was in the same position as one who had not been called. In either event, we hold that it was not an abuse of discretion for the trial court to not permit her to testify again. Roberts cites no case which would show that the trial court abused its discretion. We overrule ground of error number four.

 By ground of error number five, Roberts asserts error on the part of the trial court with respect to the admission of testimony of various witnesses as to Wanda's fear of her husband and as to actions which the witnesses took in response to

conversations they had with Wanda or conversations which she had with others that they overheard. We have examined the testimony complained of and the authorities presented. All of the testimony consists of observations as to Wanda's emotional condition or actions taken by police officers as a result of conversations. None of the testimony complained of consists of out-of-court statements offered for the truth of the matter asserted. We therefore hold that such statements were not hearsay statements. The authorities presented all relate to situations in which out-of-court statements were offered and are not relevant to the case at bar. We overrule ground of error number five.

By ground of error number six, Roberts urges that the trial court erred by allowing the prosecutor to argue that the jury could not consider voluntary manslaughter if the appellant provoked the difficulty.

Jury argument must stay within the bounds of permissible jury argument, and must not state law contrary to the court's charge. *Burke v. State*, 652 S.W.2d 788, 790 (Tex.Crim.App.1983); *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex.Crim.App.1982). The charge here read:

So, in this case, if you find and believe from the evidence beyond a reasonable doubt that the Defendant, Vernon Walter Roberts, immediately before the difficulty, then and there did some act, or used some language, or did both, as the case may be, with the intent on his, the Defendant's part, to produce the occasion for killing the deceased, Wanda Roberts, and to bring on the difficulty with the said deceased, and that such words and conduct on Defendant's part, if there was such, was reasonably calculated to, and did, provoke a difficulty, and that on such account the deceased attacked the Defendant with deadly force, or reasonably appeared to the Defendant to so attack him or to be attempting to so attack him, and that the Defendant then killed the said Wanda Roberts by the use of deadly force, to wit, by shooting her

with a gun, in pursuance of his original design, if you find there was such, then you will find the Defendant guilty of murder.

On the other hand, if you find from the evidence that the acts done or language used by the Defendant, if any, were not, under the circumstances, reasonably calcualated [sic] or intended to provoke a difficulty or an attack by deceased upon the Defendant, or if you have a reasonable doubt thereof, then in such event, Defendant's right of self defense would in no wise be abridged, impaired, or lessened, and if you so find, or if you have a reasonable doubt thereof, you will decide the issue of self-defense in accordance with the law on that subject given in other portions of this charge, wholly disregarding and without reference to the law on the subject of provoking the difficulty.

Roberts argues that one can be guilty of voluntary manslaughter if one provokes the difficulty but has no intent to kill. This theory or possibility was not included in the charge, and Roberts made no objection at trial when the trial court failed to include it. Since the prosecutor's argument was not contrary to the charge, no error is presented. *Burke*, 652 S.W.2d at 790. We overrule ground of error number six.

In ground of error number seven, Roberts asserts that the trial court erred by instructing the jury that it could convict for an offense occurring on a date subsequent to the return of the indictment. The indictment, which alleged an offense occurring on or about June 3, 1979, was returned on June 28, 1979. In one portion of the charge which applied the law to the facts, the charge showed an offense of December 3, 1979, a date subsequent to the return of the indictment. All of the evidence at trial, including that of Roberts, showed that the offense occurred on June 3, 1979, the date alleged in the indictment. This correct date was also reflected throughout the rest of the court's charge. Such an error was a clerical error which, under the facts of this

case, caused no harm to Roberts. *White v. State*, 61 Tex.Cr.R. 498, 135 S.W. 562, 564 (1911). Roberts cites no authority which would require a reversal for an error of this nature. We overrule ground of error number seven.

We sustain appellant's grounds of error numbers one and two, and overrule his grounds of error numbers three through seven. We reverse and remand for a new trial.