Melvin James SCHROEDER,
Appellant,

v.

The STATE of Texas, Appellee.

No. 13–01–333–CR.

Court of Appeals of Texas,
Corpus Christi Edinburg.

Feb. 13, 2003.

Discretionary Review Granted
June 25, 2003.

Ronnie Jo Cohee, Beaumont, Stanley Schneider, Thomas D. Moran, Houston, for Appellant.

Rodney D. Conerly, Asst. Crim. Dist. Atty., Beaumont, for Appellee.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and BAIRD.[1]

---

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

## OPINION

Opinion by Justice BAIRD.

Appellant was charged by indictment with the offense of murder. A jury convicted appellant of the charged offense and assessed punishment at confinement for life the Texas Department of Criminal Justice—Institutional Division. Appellant contends the trial court erred in failing to charge the jury on the lesser offense of manslaughter. For the following reasons, we agree and reverse the judgment of the trial court.

### I. Lesser-included Offenses.

■ A charge on a lesser-included offense must be given if (1) the lesser-included offense is included within the proof necessary to establish the charged offense, and (2) there is some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim.App.1993); *see also* TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981). The parties agree that the first prong of the *Rousseau* test has been met; voluntary manslaughter is a lesser-included offense of murder under Code of Criminal Procedure Article 37.09(3). *Moore v. State*, 969 S.W.2d 4, 10 (Tex.Crim.App.1998).

■ The issue in this case is whether there is some evidence in the record that would have permitted a jury to rationally find that appellant, if guilty of any offense, was guilty only of manslaughter. In other words, there must be some evidence from which a jury could rationally acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Moore*, 969 S.W.2d at 8. In resolving this issue, the credibility of the evidence and whether it conflicts with other evidence, or is controverted may not be considered, and, regardless of its strength or weakness, if any evidence raises the issue that the defendant was guilty only of the lesser offense, then the charge must be given. *O'Brien v. State*, 89 S.W.3d 753, 755 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (citing *Banda v. State*, 890 S.W.2d 42, 60 (Tex.Crim.App.1994); *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992)).

### II. Factual Summary.

■ Whether the defendant was entitled a charge on a lesser-included offense is determined on a case-by-case basis. *Livingston v. State*, 739 S.W.2d 311, 336 (Tex.Crim.App.1987). To make this determination, we consider all of the evidence presented by the State and the defendant. *Havard v. State*, 800 S.W.2d 195, 216 (Tex. Crim.App.1989) (op. on reh'g). Therefore, we will set forth the evidence in considerable detail.

### A. The State's Case.

Ramiro Cardenas was appellant's neighbor. Between 5:30 p.m. and 5:50 p.m. on the date of the alleged offense, Cardenas heard three loud noises, which sounded like someone was "throwing rocks," coming from appellant's home.

Appellant telephoned 911 and a recording of that conversation was admitted into evidence. The operator testified appellant blurted out in a nervous voice that he and his wife had struggled over a firearm and "the gun went off a couple of times," shooting his wife. Appellant stated, "I think I hit her in the chest."

Randal Rice a patrol officer of the Port Arthur Police Department was dispatched to appellant's home in response to a male/female disturbance involving a firearm. Rice found appellant's wife, the decedent, lying across the threshold of the front door, and radioed for EMS personnel. Rice entered the kitchen and found a .357 handgun on the counter. The weapon contained five spent shells and one unfired

cartridge. Also in the kitchen, Rice saw a broken mirror on the floor, and two bullet holes. The house was in disarray, indicating a struggle had taken place in the kitchen. According to Rice, this was consistent with a husband and wife fighting over a gun.

Allen Acord, also of the Port Arthur Police Department, was dispatched to appellant's home. Acord took appellant, who was cooperative, into custody. The search of appellant resulted in the discovery of a loaded double barreled Derringer pistol, a lock blade knife, and some bullets. Acord did not observe any injuries on appellant, but did see blood on his left forearm. Acord read appellant his Miranda warnings. Appellant replied, "It was an accident" and "I did not mean to." Appellant displayed no emotion when making these statements. Acord's report revealed that he was dispatched to a scene where a man "accidentally shot his wife." Acord stated he had never investigated an accidental shooting where the decedent had sustained two or more gunshot wounds.

Patrick Queen, of the forensics division of the Port Arthur Police Department was sent to appellant's home. He examined the bullet holes found by Rice. The hole in the floor contained the entire bullet. The bullet fired into the ceiling, however, went through the roof and, therefore, was not recovered. Queen examined the firearm recovered from the kitchen counter for fingerprints, but was unable to make any positive identification. He tested the hands of appellant and the decedent to determine if they had recently fired a gun. Juan Rojas of the Texas Department of Public Safety crime lab in Austin testified that both tests were negative.[2] Rojas testified that the submission form accompanying the samples stated appellant and the decedent had struggled over a firearm.

The coroner examined the decedent, a female who was 5' 8" tall and weighed 200 pounds. The decedent had been shot thrice; two of the shots entered the decedent from the side and the third from the back. In the coroner's opinion, all shots were fired from a distance greater than twenty to twenty-four inches. Further, the decedent's injuries were not consistent with a struggle involving a gun. The coroner opined that a gun shot wound to the back generally means the victim was trying to get away. This would indicate the decedent had her back to appellant at some point. The coroner testified that it was possible that one of the bullets ricocheted into the decedent.

### B. Appellant's Case.

Trudy Henderson, the decedent's older sister, testified she, along with her mother and nephew, went to the decedent and appellant's home on the date of the alleged offense for a Memorial Day barbecue. Trudy said her sister was normally sweet and loving, but that she had a temper that could make her mean and violent. Before meeting appellant, the decedent had been in an altercation wherein she threw another female on top of a car. Trudy stated the decedent carried a gun in her purse at all times, and identified the firearm recovered from the kitchen as the same or similar gun. Trudy did not notice anything out of the ordinary before leaving between 5:00 p.m. and 5:30 p.m. Specifically, Trudy testified appellant and the decedent had not been arguing, fighting, or complaining. She stated she never felt appellant would be a danger to the dece-

---

**2.** A negative result means one of three things: (a) that the individual had not recently fired a weapon, or been in the immediate proximity when the weapon was fired; (b) the individual removed the residue by applying some type of moisture to the hands; or (c) the weapon or ammunition did not release residue when fired.

dent although he had, on many occasions, accused the decedent of being unfaithful.[3] Upon being notified by the Justice of the Peace of the decedent's death, Trudy returned to the residence and saw the home in disarray which appeared to have resulted from a struggle.

The decedent's mother, Rita Henderson, testified the decedent was a violent person who would not be pushed around by anyone. Rita stated the decedent carried a gun at all times and had seen the decedent draw the firearm in anger on a previous occasion. On the date of the alleged offense, Rita did not notice anything out of the ordinary; the couple was not yelling, or fighting with one another. In fact, Rita saw appellant kiss the decedent goodbye before he went to the store. Rita testified the decedent was "fidgety" because she wanted to go to Louisiana to gamble.[4] Rita stated that the decedent and appellant had a mutually distrusting and jealous relationship. Rita believed that if appellant pushed the decedent, he would be killed by the decedent.

Appellant testified that he met the decedent in the Spring of 1992. After several discreet meetings, appellant left his wife to be with the decedent. The two married in 1994, and lived together with the decedent's son. Even though appellant had prostrate problems that affected his ability to perform sexually, he claimed the decedent was reassuring. In 1999, the couple used their tax refund to improve their home. Appellant testified the marriage suffered from financial problems and "jealousy on both sides." Appellant identified a letter prepared by the decedent and signed by appellant pledging his fidelity to the decedent. *See* n. 3, *supra*. Both ap-

pellant and the decedent carried weapons on a daily basis. In fact, appellant bought the decedent the .357 magnum that caused her death. Appellant had never threatened to kill the decedent, and the two never had a physical confrontation.

On the date of the alleged offense, appellant stated there had been no arguments. After their guests left, the decedent wanted to gamble. This led to an argument because of the couple's financial problems. Appellant testified that when an argument started, he would leave the house to let things cool down. On this occasion, he went to the bedroom to change from his shorts into his pants. The decedent continued the argument by hollering at appellant from the kitchen. Appellant heard the sound of things breaking in the kitchen. As appellant exited the bedroom he saw the decedent pointing a gun at him, and saying: "I'm going to kill you, you mother fucker you sorry mother fucker. I'm going to kill." At this point, the two began to wrestle in the kitchen over the gun. They fell to the floor "between the kitchen and dining room area." The decedent was on top and then the two began rolling, and rolled to the front door. Appellant heard hollering and screaming and then all of a sudden loud noises. Appellant immediately telephoned 911.

Appellant stated he struggled with the decedent because he thought he could take the gun away from her. Appellant testified on cross-examination that he pushed the decedent's arm and grabbed the gun. The decedent with her hand hit appellant in the back of the head, and appellant had the gun. Then the decedent grabbed the gun away from appellant. Appellant did

---

**3.** The State introduced two statements signed by the decedent wherein she claimed her fidelity to appellant. These statements were dated June 20, 1997, and February 17, 1999.

**4.** Both Trudy and Rita testified that the decedent enjoyed gambling on "the boats" in St. Charles, Louisiana. Her gambling caused financial problems that was a source of acrimony in the marriage.

not remember two shots being fired in the kitchen. Appellant stated that he had difficulty recalling all of the events because he blacked-out during the struggle. Appellant agreed that it would be "far fetched" for the decedent to have shot herself in the back during the struggle.

The trial judge instructed the jury on the defensive issues of accident and self defense. However, he denied appellant's requested instruction on the lesser-included offense of manslaughter.

### III. Analysis.

■ A conviction for manslaughter requires a finding that the defendant recklessly caused the decedent's death. TEX. PEN.CODE ANN. § 19.04 (Vernon 1994).[5] Manslaughter is, by definition, an accidental homicide, committed with recklessness. *Lawson v. State*, 64 S.W.3d 396, 398 (Tex. Crim.App.2001) (Cochran, J., concurring). "A person acts recklessly, or is reckless, with respect to … the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that … the result will occur." TEX. PEN.CODE ANN. § 6.03(c) (Vernon 1994). A manslaughter charge is required if there is any evidence from which a jury could conclude the defendant did not intentionally or knowingly kill an individual, but consciously disregarded a substantial and unjustifiable risk the result would occur. *Lugo v. State*, 667 S.W.2d 144, 147 (Tex. Crim.App.1984). "[A] defendant may be shown to be guilty only of the lesser offense if the evidence presented is subject to different interpretations." *Saunders*, 840 S.W.2d at 392. Moreover, it is immaterial whether the evidence "fit[s] in with

the larger theme of [the] defendant's testimony," "whether [it] was admitted by the State or the defense," and whether it is "strong or weak, unimpeached or contradicted." *Jones v. State*, 984 S.W.2d 254, 257 (Tex.Crim.App.1998).

■ In determining whether appellant was entitled to a charge on a lesser-included offense, we view the evidence in the light most favorable to appellant. *Granger v. State*, 3 S.W.3d 36, 38 (Tex.Crim. App.1999). Reviewing the evidence in this manner, appellant exited his bedroom and saw the decedent in the kitchen armed with a firearm, and appellant attempted to forcefully disarm the decedent. A struggle ensued, during which the decedent was fatally injured. Appellant's version of the events is corroborated in several respects: (a) Officer Rice and Trudy testified the home was in disarray which indicated a struggle; Rice further testified this was consistent with a husband and wife fighting over a gun; (b) appellant stated to Officer Acord: "It was an accident" and "I did not mean to;" (c) Officer Acord reported he was dispatched to a scene where a man "accidentally shot his wife;" (d) Officer Queen's submission form to Rojas stated appellant and the decedent had struggled over a firearm; (e) Rita Henderson testified that she had seen the decedent draw the firearm in anger on a previous occasion; and, (f) the decedent's death was caused by her own firearm which she kept in her purse.

Both the State and appellant rely on the case of *Roberts v. State*, 682 S.W.2d 438, (Tex.App.-Fort Worth 1984), *pet. dism'd, improvidently granted,* 765 S.W.2d 789

---

5. For many years, the offense of recklessly causing the death of an individual was called "involuntary manslaughter." *See* Act of 1973, 63d Leg., R.S., ch. 399, §§ 1, sec. 19.05(a)(1), 1973 Tex. Gen. Laws 913. By a legislative act which took effect on September 1, 1994, the offense was renamed "man-

slaughter" and renumbered as Texas Penal Code section 19.04(a), without substantive change. *See* Act of June 19, 1993, 73d Leg., R.S., ch. 900, §§ 1.01, sec. 19.04(a), 1993 Tex. Gen. Laws 3614. Many of the cases cited below were decided in the context of "involuntary manslaughter."

(Tex.Crim.App.1989), as being similar to the instant case. In *Roberts,* the defendant shot the decedent twice in the upper chest at a range of six to twelve inches. *Roberts,* 682 S.W.2d at 442.[6] The defendant then drove to the emergency room, and told a nurse that he had been shot and that the police were after him because he had killed a couple of people. *Id.* The defendant testified he went to the decedent's apartment to trade his pistol for her shotgun. *Id.* He said he threw the pistol on the floor when the decedent asked for it. *Id.* The defendant said she (the decedent) was holding a shotgun at the time, and that he shot the decedent while they were struggling over possession of his pistol after she had shot him with the shotgun. He said that he did not have any intention of harming her. *Id.* The *Roberts* Court held the defendant's testimony raised the issue of recklessness and, therefore, the trial judge erred in failing to charge the jury on the lesser offense of involuntary manslaughter. *Id.* The holding in *Roberts* is consistent with the many cases we have found dealing with reckless acts and firearms. *Ross v. State,* 861 S.W.2d 870, 875 (Tex.Crim.App.1992) (involuntary manslaughter charge required when gun "accidentally" discharged while being pointed at victim's head); *Hayes v. State,* 728 S.W.2d 804 (Tex.Crim.App.1987) (charge on recklessness required when defendant retrieved gun from his apartment and shot complainant in ensuing struggle); *Bell v. State,* 693 S.W.2d 434 (Tex.Crim. App.1985) (defendant firing four shots into an occupied trailer home was entitled to reckless conduct charge); *Salinas v. State,* 644 S.W.2d 744, 746 (Tex.Crim.App.1983) (discharge of pistol with no intent to kill

merited charge on involuntary manslaughter); *Johnson v. State,* 828 S.W.2d 511, 514–15 (Tex.App.-Waco 1992, pet. ref'd) (defendant firing at police officer entitled to third-degree aggravated assault charge, including recklessly, due to evidence of lack of intent to kill); *Mullins v. State,* 767 S.W.2d 166, 169–70 (Tex.App.-Houston [1st Dist.] 1988, no pet.) (defendant firing shot at victim should have been given reckless conduct charge); *Hernandez v. State,* 742 S.W.2d 841, 843 (Tex.App.-Corpus Christi 1987, no pet.) (defendant who fired "to scare" entitled to involuntary manslaughter charge); *Sadler v. State,* 728 S.W.2d 829, 831 (Tex.App.-Dallas 1987, no pet.) (evidence sufficient to prove involuntary manslaughter where death resulted when husband and wife struggled over firearm).

▮ In light of this authority and the evidence recounted above, we must hold there is some evidence that appellant acted recklessly, and that the jury could have rationally found that appellant, if guilty, was guilty only of manslaughter. As the Court of Criminal Appeals stated in *Moore:* "Any evidence that the defendant is guilty only of the lesser included offense is sufficient to entitle the defendant to a jury charge on the lesser included offense." *Moore,* 969 S.W.2d at 8 (citing *Bignall v. State,* 887 S.W.2d 21, 23 (Tex. Crim.App.1994)). The fact that this evidence may be weak is irrelevant. *Saunders,* 840 S.W.2d at 391 ("[R]egardless of the strength or weakness of the evidence, if any evidence raises the issue that the defendant was guilty only of the lesser offense, then the charge must be given.") The fact that appellant's testimony was controverted by the testimony of the coro-

---

**6.** The State argues the "critical distinction" between *Roberts* and the instant case is that *Roberts* "involved a single gunshot, while the current case involved three gunshot wounds." State's br. pp. 6–7. However, this "critical distinction" is not supported by the opinion

which states: "Wanda had been shot twice in the upper chest at a range of six to twelve inches by a gun firing a bullet over .30 caliber. The lower of these wounds caused her death a few minutes after the shot was fired." *Roberts,* 682 S.W.2d at 442.

ner is also immaterial to our analysis. *Moore*, 969 S.W.2d at 8 ("court may not consider whether the evidence is . . . controverted,. . . ."); *Granger v. State*, 3 S.W.3d 36, 38 (Tex.Crim.App.1999) ("[A]n accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is . . . contradicted,. . . ."). Furthermore, the trial judge's doubts about the credibility of the evidence giving rise to the lesser offense is of no moment. *Id.* (defendant entitled to charge on defensive theory "regardless of what the trial court may or may not think about the credibility of the evidence."); *Hayes*, 728 S.W.2d at 807 (citing *Shaw v. State*, 510 S.W.2d 926 (Tex.Crim.App.1974) (opinion on motion for rehearing), *Carter v. State*, 515 S.W.2d 668 (Tex.Crim.App. 1974)). Accordingly, we hold the trial judge erred in failing to charge on the lesser-included offense of manslaughter.

### IV. Harm Analysis.

 The erroneous refusal to give a requested instruction on a lesser-included offense is subject to an *Almanza* harm analysis. *Saunders*, 840 S.W.2d at 392; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on rehearing). When the error occurs despite the defendant's objection, reversal is required if the error resulted in some harm to the accused. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986); *Almanza*, 686 S.W.2d at 171. If the absence of the lesser-included offense instruction left the jury with the sole option either to convict the defendant of the charged offense or to acquit him, a finding of harm is essentially automatic because the jury was denied the opportunity to convict the defendant of the lesser offense. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex.Crim.App.1995). In cases such as this, there is a distinct possibility that the jury, believing the defendant to have committed some crime, but given only the option to convict him of the great-

er offense, may have chosen to find him guilty of that greater offense, rather than to acquit him altogether, even though it had a reasonable doubt that he really committed the greater offense. *Id.* (citing *Beck v. Alabama*, 447 U.S. 625, 634, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)).

In the instant case, the jury had two options: find appellant guilty of murder or acquit him. It chose to convict him of murder and assessed punishment at confinement for life, the maximum sentence for the charged offense. *See* TEX. PEN. CODE ANN. §§ 19.02, 12.32 (Vernon 1994). On the other hand, the range of punishment for manslaughter is from two to twenty years confinement. TEX. PEN.CODE ANN. §§ 19.04, 12.33 (Vernon 1994). Appellant was harmed because the jury was not given the opportunity to find him guilty of the lesser offense, which it could rationally have done based on the evidence.

Appellant's first point of error is sustained. The judgment of the trial court is reversed, and the case remanded for further proceedings. TEX.R.APP. P. 43.2(d).