COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-328-CR

 

WAYNE EDGAR EDWARDS                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

In one
point, Appellant Wayne Edgar Edwards appeals his conviction for murder,
contending that the trial court erred by denying his request for jury
instructions on the lesser-included offenses of criminally negligent homicide
and manslaughter.  We affirm.   

 








II. 
Factual and Procedural Background

When
Deborah Edwards returned home from work one evening, she saw her estranged
husband, Edwards, waiting nearby. 
Deborah stayed inside the car and called her children, who were inside
the house, to tell them to lock the doors to the house.  Edwards then walked up to the driver=s side
window and told her to roll down the window. 
She refused.  He shot her in the
face with a 9-millimeter Tech-9 semi-automatic handgun. 

Later
that evening, Arlington police arrested Edwards as he was on his way to turn
himself in.  Police found a gun inside
the trunk of the vehicle he was in at the time of his arrest.  Forensic tests later confirmed that it was
the same gun that killed Deborah.

Edwards
was indicted on alternate theories of murder. 
The first paragraph alleged that Edwards did Athen and
there intentionally or knowingly cause[d] the death of an individual, Deborah
Edwards, by shooting Deborah Edwards with a deadly weapon to wit: a firearm[.]@  The second paragraph alleged that Edwards did
Athen and
there intentionally, with the intent to cause serious bodily injury to Deborah
Edwards, commit an act clearly dangerous to human life, namely, shoot Deborah
Edwards with a deadly weapon to wit: a firearm, which caused the death of
Deborah Edwards[.]@ 








Edwards
pleaded not guilty.  During the trial,
Arlington Police Officer Seth Archer testified to statements Edwards made while
being transported to the Arlington City Jail. 
Officer Archer testified that Edwards told him, AI had
the gun in my hand, and she wouldn=t roll
the window down, and the gun went bang.@  Officer Archer also testified that Edwards
said that he had planned to kill other family members and that he knew that
what he did was wrong. 

At
trial, the State published a video-recording of an interview taken when Edwards
was in custody.  During the interview,
Edwards said several times that he had intended to kill his wife.  He also stated that he had planned to kill
her mother and sister too. 

At the
conclusion of the trial, Edwards requested jury instructions for the
lesser-included offenses of criminally negligent homicide and
manslaughter.  The trial court denied his
request.  The court=s charge
presented the alternate theories of murder as authorized by the indictment, and
the jury found Edwards guilty of murder and assessed punishment at ninety-nine
years=
confinement and a $10,000 fine. 

III. 
Discussion

In his
sole point, Edwards contends that the trial court erred by refusing to instruct
the jury on the lesser-included offenses of criminally negligent homicide and
manslaughter. 








A.  Standard of Review

We use a
two-step analysis to determine whether an appellant was entitled to a
lesser-included offense instruction. 
Hall v. State, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); Rousseau
v. State, 855 S.W.2d 666, 672B73 (Tex.
Crim. App.), cert. denied, 510 U.S. 919 (1993).  First, the lesser offense must come within
article 37.09 of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon
2006); Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  AAn
offense is a lesser included offense if . . . it differs from the offense
charged only in the respect that a less culpable mental state suffices to
establish its commission.@ 
Tex. Code Crim. Proc. Ann. art. 37.09(3).








Second,
some evidence must exist in the record that would permit a jury to rationally
find that if the appellant is guilty, he is guilty only of the lesser
offense.  Hall, 225 S.W.3d at 536;
Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau,
855 S.W.2d at 672B73.  The evidence must be evaluated in the context
of the entire record.  Moore, 969
S.W.2d at 8.  There must be some evidence
from which a rational jury could acquit the appellant of the greater offense
while convicting him of the lesser-included offense.  Id. 
The court may not consider whether the evidence is credible,
controverted, or in conflict with other evidence.  Id. 
Anything more than a scintilla of evidence may be sufficient to entitle
a defendant to a lesser charge.  Hall,
225 S.W.3d at 536.  If sufficient
evidence of more than one theory of the greater offense is presented to allow
the jury to be charged on alternate theories, the second prong of the test is
satisfied only if there is evidence that, if believed, refutes or negates every
theory that elevates the offense from the lesser to the greater.  Arevalo v. State, 970 S.W.2d
547, 549 (Tex. Crim. App. 1998).

B. Lesser-Included Offenses 

Voluntary
manslaughter is a lesser-included offense of murder under article 37.09(3) of
the code of criminal procedure.  Moore,
969 S.W.2d at 9; Kennedy v. State, 193 S.W.3d 645, 651 (Tex. App.CFort Worth
2006, pet. ref=d).  Criminally negligent homicide is also a
lesser-included offense of murder, and it is a lesser-included offense of
manslaughter because the two offenses differ only in that criminally negligent
homicide requires a less culpable mental state. 
Stadt v. State, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005); Lugo
v. State, 667 S.W.2d 144, 147 (Tex. Crim. App. 1984).  

1.  Mens Rea








To be
found guilty of murder, an individual must intentionally or knowingly cause the
death of another or intend to cause serious bodily injury.  Tex. Penal Code Ann. '
19.02(b)(1)B(2) (Vernon 2003).  A person acts intentionally, or with intent,
with respect to the nature of his conduct or to a result of his conduct when it
is his conscious objective or desire to engage in the conduct or cause the
result.  Id. '
6.03(a).  He acts knowingly, or with knowledge,
with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.  Id.
'
6.03(b).  

In
contrast, to be found guilty of manslaughter, an individual must recklessly
cause the death of an individual.  Id.
'
19.04(a).  A person acts recklessly with
respect to circumstances surrounding his conduct or the result of his conduct
when he is aware of but consciously disregards a substantial and unjustifiable
risk that the circumstances exist or the result will occur.  Id. ' 6.03(c).
 For a defendant to be entitled to a jury
charge on manslaughter, there must be some evidence that the defendant did not
intend to kill or cause serious bodily injury and that the defendant acted
recklessly while ignoring a known risk.  Kennedy,
193 S.W.3d at 651.  Courts have typically
found that a manslaughter instruction is required when there is some evidence
that a gun discharged accidentally or that the defendant only intended to
frighten the victim.  Arnold v. State,
234 S.W.3d 664, 672 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).  However, a defendant=s denial that he
intended to kill the victim does not, of itself, raise the issue of
manslaughter.  Id.








To be
found guilty of criminally negligent homicide, an individual must cause the
death of an individual by criminal negligence. 
Tex. Penal Code Ann. '
19.05(a).  A person acts with criminal
negligence with respect to circumstances surrounding his conduct or the result
of his conduct when he ought to be aware of a substantial and unjustifiable
risk that the circumstances exist or the result will occur.  Id. ' 6.03(d).  The key to criminal negligence is the actor=s failure to
perceive the risk created by his conduct. 
Trujillo v. State, 227 S.W.3d 164, 168 (Tex. App.CHouston [1st
Dist.] 2006, pet. ref=d). 
If the evidence shows that the actor=s
awareness was such that he perceived the risk he created, he is not entitled to
a charge of criminally negligent homicide. 
Id.

2.  Analysis








The record
reflects that Edwards was not entitled to a lesser-included offense instruction
on either manslaughter or criminally negligent homicide.       With regard to manslaughter, Edwards argues that the evidence
establishes that the gun discharged accidently and that Edwards wanted only to
speak with his wife and scare her.[2]  Specifically, he refers to statements he made
to Officer Archer, statements he made during his videotaped interview, and
testimony by the State=s firearm expert in support of his
contentions. However, we must evaluate this evidence in the context of the
entire record.  See
Moore, 969 S.W.2d at 8. 

Edwards directs us
to statements he gave to Officer Archer after being arrested as support for his
argument.  While being taken to the
Arlington City Jail, Edwards told Officer Archer that he just wanted to talk to
Deborah and he Ahad the gun in [his] hand, and she wouldn=t roll the window
down, and the gun went bang.@  Edwards argues that this statement creates
the inference that the gun discharged accidently, that he did not intend to
murder Deborah, and that his intention was to speak with her.  However, the simple statement Athe gun went bang@ says nothing
about whether Edwards intentionally pulled the trigger or whether it discharged
accidently.  See Arnold, 234
S.W.3d at 671B72 (holding that defendant=s testimony that Athe door flung
open and I felt-and the gun went off@ did not create
the inference that the gun accidentally discharged).








Edwards also
points to his statement during his custodial interview that he did not intend
to hurt his wife.  This statement,
however, Acannot be plucked out of the record and
examined in a vacuum.@  Id.
at 671B72 (quoting Godsey v. State, 719
S.W.2d 578, 584 (Tex. Crim. App. 1986)). And any inference that Edwards
unintentionally killed his wife is negated by the context in which he made the
statement in light of the rest of his interview.  While describing his plan to put his wife in
the trunk of his car and torture her, Edwards told the detective, AI never did intend
to hurt my poor sweet wife, you hear.  But
she had gone too far.@ 
Other statements made in the interview make it clear that Edwards fully
intended to shoot his wife:

$       
AI hurt somebody, . . . that=s not right, but it had to be done.
. . .  I had to stop my wife from doing
what she was doing . . . .@  

 

$       
AI intended to take her and torture
her. . . .  I intended to go to her
mother=s house and kill her sister who
tortured meCthey hurt me for yearsCand her mother, eighty years old,
oh, I was going to blow her brains out for what she done to me.@ 

 

$       
AI said, >Roll the window all the way down.= 
That was a [sic] order.  If she
had of [sic] rolled that window down, she would be alive today.@ 

 

$       
AShe didn=t open the window, and I said, >Well, you just want to die right
here.= 
Pow!  The thing went off.@ 

 

$       
ABut I did intend to kill her.  I didn=t . . . go not to kill her.@ 

 

$       
AI intended to kill her.@

 

$       
AI definitely had to kill her for
[allegedly sexually abusing their daughters] . . . she got away with it all
this time.@[3]








Finally, Edwards
points to testimony of the State=s firearm expert,
Jamie Becker, who testified that the gun=s firing pin was
defective so that sometimes the gun fired as a semi-automatic weapon and
sometimes as a fully automatic weapon. 
However, Becker=s testimony also establishes that whether
the gun was fired in semi-automatic mode or in fully automatic mode, the
trigger still had to be pulled with five to seven pounds of pressure.  Nothing in this testimony indicates that Edwards
did not intentionally kill his wife or that he acted with conscious disregard
of a known risk.  Rather, this evidence
indicates that the trigger had to be pulled for the gun to discharge.  








In sum, the
evidence does not raise the issue of manslaughter.  The evidence shows that Edwards had a plan to
kidnap and torture his wife and then to kill his mother-in-law and
sister-in-law.  In furtherance of his
plan, Edwards went to his storage unit, retrieved his gun, went to his wife=s house, and
waited for her to get home.  When his
wife arrived home, Edwards walked up to her car and told her to roll down the
window.  When she refused to do so, he
became angry, pointed the gun at her head, and pulled the trigger with five to
seven pounds of pressure.  He then fled
the scene of the crime.  There is no
evidence of a lack of intent or that Edwards acted recklessly while ignoring a
known risk; rather the evidence shows a deliberate and voluntary act. In light
of the entire record, Edwards=s isolated
statements do not constitute evidence upon which a jury could rationally find
that Edwards was guilty only of manslaughter. 
See Arnold, 234 S.W.3d at 671B73 (holding that
defendant=s isolated statements that he was not
aiming at the victim and did not intend to kill him did not raise the issue of
manslaughter where defendant also testified that he meant to shoot the victim);
Munoz v. State, 932 S.W.2d 242, 245B46 (Tex. App.CTexarkana 1996, no
pet.) (holding that defendant=s testimony that
he did not remember shooting the victim but did not intend to kill him did not
raise the issue of manslaughter); Johnson v. State, 915 S.W.2d 653, 659
(Tex. App.CHouston [14th Dist.] 1996, pet. ref=d) (holding that
defendant=s statement that he did not intend to kill
the victim did not raise the issue of manslaughter when the defendant also
testified that he shot the victim in self-defense).  We overrule this portion of Edwards=s sole point.








The same evidence
shows that Edwards was not entitled to an instruction on criminally negligent
homicide, because it conclusively shows that he clearly perceived the risk posed
by pointing the handgun at his wife.  See
Trujillo, 227 S.W.3d at 168. That is, Edwards owned the gun, indicating
familiarity with it.  He knew the gun was
loaded.  He retrieved it as part of a
plan to kidnap and torture his wife.  He
used the gun to try to coerce his wife into rolling down the window.  Because there is no evidence in the record to
show that Edwards failed to perceive the risk created by his conduct, and all
the evidence indicates that he did perceive that risk, the trial court did not
err by refusing to give an instruction on criminally negligent homicide.  See Thomas v. State, 699 S.W.2d
845, 850 (Tex. Crim. App. 1985) (holding that evidence that a defendant knows a
gun is loaded, that he is familiar with guns and their potential for injury,
and that he points a gun at another indicates that he is aware of the risk
created by that conduct and disregards the risk); Jackson v. State, 248
S.W.3d 369, 373 (Tex. App.CHouston [1st
Dist.] 2007, pet. ref=d) (holding that using a gun appellant
knew to be loaded as a means to coerce an individual into paying back money
indicated that appellant perceived the risk posed by drawing the weapon and
chose to disregard that risk); Trujillo, 227 S.W.3d at 168 (holding that
brandishing a loaded gun to frighten people indicates awareness of a risk posed
by a loaded gun).  We overrule the
remainder of Edwards=s sole point.

 

 

 

 








IV. Conclusion

Having
overruled Edwards=s sole point of error, we affirm
the trial court=s judgment.

 

BOB MCCOY

JUSTICE

 

PANEL: DAUPHINOT, GARDNER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: January 7, 2010











[1]See Tex. R. App. P. 47.4.





[2]In support of this argument,
Edwards states that the State addressed the theory that the shooting was an
accident during closing arguments. 
However, jury arguments are not evidence; therefore, we will not
consider them in our analysis.  See
Hutch v. State, 922 S.W.2d 166, 173 (Tex. Crim. App. 1996).  





[3]Officer Archer testified
that Edwards said he believed his wife and other family members had been
sexually abusing their children for many years. Arlington Police Officer Dara
DeWall testified that Edwards had made these allegations against his wife in 2001
and that the detective on the case concluded the allegations were unfounded
because of a lack of evidence.