**Luis LUGO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 312–83.

Court of Criminal Appeals of Texas,
En Banc.

March 14, 1984.

J. Douglas Tinker, A. Deniz Tor, Mark A. Haynes, Corpus Christi, for appellant.

William B. Mobley, Jr., Former Dist. Atty., Grant Jones, Dist. Atty., Paul Raleigh, Aubrey R. Williams and Jeffery A. Babcock, Asst. Dist. Attys., Corpus Christi,

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

This is an appeal from a conviction for murder. After a trial by jury, the court assessed punishment at 16 years.

On direct appeal, appellant contended in his sole ground of error that the trial court erred in refusing to instruct the jury on the lesser included offense of involuntary manslaughter. The Corpus Christi Court of Appeals held that the evidence did not raise the issue of involuntary manslaughter and affirmed the conviction. *Lugo v. State,* 653 S.W.2d 513 (Tex.App.—Corpus Christi 1983). We granted appellant's petition for discretionary review in order to review that holding.

The record reflects that in the early morning hours of December 7, 1980, appellant shot and killed his wife of ten years during an argument at their home. According to the testimony of the victim's two teenage daughters, the couple had been out earlier in the evening and had come home arguing. At about 2:00 a.m., appellant's wife came into the girls' bedroom and stated that appellant had tried to choke her and that she was throwing him out of the house. She screamed at appellant to pack his clothes and leave. Appellant had begun to pack and appellant's wife was still in the bedroom when the girls heard a noise like a gun being cocked. Appellant walked into the bedroom carrying the victim's 30–30 rifle. Appellant's wife grabbed the rifle, tried to pull it away from appellant, and told him, "I knew you had it somewhere." Sometime during the struggle, one of the girls asked appellant not to shoot their mother and he responded "Why not. She doesn't love me no more. She's running me out of the house...." When appellant's wife stopped pulling on the gun and released it, she was immediately shot in the abdomen. As she fell to the floor, she dropped a set of keys she had been holding. One of the girls testified that appellant was holding the rifle, at his side, level, and was pointing the gun at the victim. After the shot was fired, appellant dropped the rifle and called the police. He was described as remorseful, upset, and crying. Appellant's wife died two hours later.

Appellant testified that when he and his wife returned to their home they started arguing about his decision to loan a car to one of his daughters. Eventually, the couple had gone to bed with the argument apparently abandoned. Appellant's wife, however, awakened him at about 2:00 a.m., told him "I don't trust you," and ordered him to leave the house. She said she wanted her rifle and she wanted the keys to the house. He denied having tried to choke her. While he was packing his clothes, he found the rifle and decided to give it to her in exchange for the keys to the car which were on the key ring she had taken with her. When he walked into the other bedroom, he told her he would give her the gun if she would give him the keys to the car; instead, his wife grabbed the rifle, jerked on it, then turned it loose and the gun "went off." Appellant testified he did not intend to kill his wife, he had neither cocked the gun nor loaded it, and he had believed the rifle was empty because his wife always kept it unloaded. He also testified that he had been aware that the rifle, if loaded, was dangerous and could kill someone, and that he should have checked to make sure it was unloaded.

The trial court in the instant case instructed the jury on the law of murder, the law of criminally negligent homicide, and the law of accident. Appellant objected to the trial court's failure to submit a charge on the law of involuntary manslaughter.

The Court of Appeals held that the appellant's testimony *negated* the intent required by involuntary manslaughter. *Lugo,* supra at 515. The court, in effect, held that if the appellant's testimony in any way denied an element of the lesser included offense, the appellant waived any right

he might have to request the defensive charge even if evidence presented by the State supplied the missing element. Therefore, prior to reaching the merits of appellant's contention, we find it necessary to correct this misstatement of law.

■ It has long been recognized in Texas that a defendant is entitled to a charge on a defensive theory regardless of whether the evidence supporting the defensive theory is contradicted. As was explained by the Court of Appeals in *Liskosski v. State*, 23 Tex.App. 165, 3 S.W. 696, 698 (Tex.Ct.App.1887):

> "Any theory legitimately arising out of the evidence in a case imposes upon the court the duty of submission by appropriately instructing upon the law governing it; and this, without regard to the strength or weakness of the supporting facts. Uniform with the previous rulings of this court is the doctrine here declared, viz.: The charge of the court must make a pertinent application of the law covering every theory arising out of the evidence; that the duty is not dependent upon the court's judgment of the strength or weakness of the testimony supporting the theory, *it being the prerogative of the jury to pass upon the probative force of the testimony.*" (emphasis added).

See also, *Jones v. State*, 33 Tex.Cr.R. 492, 26 S.W. 1082 (Tex.Cr.App.1894), and *Arnwine v. State*, 49 Tex.Cr.R. 5, 90 S.W. 39, 40 (Tex.Cr.App.1905).

Moreover, in an opinion written by this Court more than sixty years ago, the same reasoning used by the Court of Appeals in this case was soundly rejected. In *Steen v. State*, 88 Tex.Cr.R. 256, 225 S.W. 529 (Tex.Cr.App.1920), the State argued on Motion for Rehearing that the defendant's testimony "negatived" the intent necessary to require a charge on the lesser included offense of manslaughter. The Court held that:

> "[I]t is not necessary that the testimony of the accused be that which raises the issue of manslaughter ... if the facts of the case in evidence fairly tend to indicate [manslaughter] ... it becomes the duty of the trial court to submit manslaughter, and leave to the jury the ascertainment of whether or not such killing was the result of such cause, and whether or not such cause was adequate ... even though the accused claimed the homicide an accident." *Steen*, supra at 531.

See also, *Cantu v. State*, 101 Tex.Cr.R. 386, 276 S.W. 432, 435 (1925); *Fletcher v. State*, 114 Tex.Cr.R. 276, 23 S.W.2d 369 (1930).

Fifty years later in *Thompson v. State*, 521 S.W.2d 621 (Tex.Cr.App.1974), this Court once again addressed this issue. The defendant in *Thompson* was convicted of assault with intent to murder a peace officer. The officer testified that the defendant pointed a gun at him and fired. The defendant testified that he did not shoot toward the officer and that he did not intend to endanger anyone. The trial court refused to instruct the jury on the law of aggravated assault. The State argued on appeal that no such instruction was necessary because the defendant testified that he did not fire the gun at the officer. Thus, the defendant was either guilty of the offense charged or, as he testified, he was guilty of no offense. This Court found the State's reasoning to be incorrect for the following reason:

> "[T]he State's contention ... ignores the proposition that the jury may accept or reject all or a part of a witness's testimony, and even though a part of that testimony is in conflict with or is contradicted by other evidence the jury may give credence to that part of the testimony. [citations omitted]

> "It is also well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, *whether produced by the State or the defendant,* and whether it be strong, weak, unimpeached, or contradicted. [citations omitted]. [emphasis added].

> "The jury in the present case could have *reasonably* rejected the appellant's testimony that he did not fire at the

officer; it could have *reasonably* believed the officer's testimony that the appellant did fire the pistol at him at close range; it could have *reasonably* believed the appellant's testimony that he did not intend to kill the officer. The appellant has the right to have the jury and not the court decide these issues from the evidence under proper instruction." (emphasis in original). *Thompson,* supra at 624.

Over the years, we have continued to follow the reasoning of *Steen,* supra, and *Thompson,* supra, by holding that:

"The credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered in determining whether a defensive charge or an instruction on a lesser included offense should be given. When evidence *from any source* raises a defensive issue or raises an issue that a lesser included offense may have been committed ... the issue must be submitted to the jury. It is then the jury's duty under the proper instructions to determine whether the evidence is credible and supports the defense or the lesser included offense." (emphasis added). *Moore v. State,* 574 S.W.2d 122, 124 (Tex. Cr.App.1978).

The language of *Moore,* supra, was quoted with approval in *Schoelman v. State,* 644 S.W.2d 727 (Tex.Cr.App.1983). See also *Ormsby v. State,* 600 S.W.2d 782 (Tex.Cr. App.1979); *Montgomery v. State,* 588 S.W.2d 950 (Tex.Cr.App.1979); *Torres v. State,* 585 S.W.2d 746 (Tex.Cr.App.1979); *Branham v. State,* 583 S.W.2d 782 (Tex.Cr. App.1979); *Swain v. State,* 583 S.W.2d 775 (Tex.Cr.App.1979); *Duson v. State,* 559 S.W.2d 807 (Tex.Cr.App.1977).

■ In determining whether evidence has been presented which raises the issue of a lesser included offense, the language in a few opinions of this Court has implied that a defendant's testimony can "negate" such evidence, see *Simpkins v. State,* 590 S.W.2d 129 (Tex.Cr.App.1979), or that we will consider only the testimony of a defendant in reaching that determination, see

*Brooks v. State,* 548 S.W.2d 680 (Tex.Cr. App.1977). In light of the foregoing we find such an approach to be erroneous and expressly disapprove of same. We will continue to consider *all* the evidence presented at trial in order to determine whether an instruction on a lesser included offense should be given.

■ We now address the merits of appellant's contention. Article 37.08, V.A.C. C.P., provides that in a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense. Furthermore, Article 36.14, V.A.C.C.P., requires that the trial judge deliver to the jury a written charge distinctly setting forth the law applicable to the case. Thus if the evidence adduced at trial raises an issue that a lesser included offense may have been committed, the trial judge must include a proper instruction on the lesser included offense. *Moore,* supra.

■ Since involuntary manslaughter requires a lesser culpable mental state on the part of the defendant, it is by definition a lesser included offense of murder. *Brooks,* supra. See Article 37.09, V.A.C. C.P. Criminally negligent homicide is, in turn, a lesser included offense of involuntary manslaughter. *Ormsby,* supra.

■ The distinction between involuntary manslaughter and criminally negligent homicide is simply one of degree. *Salinas v. State,* 644 S.W.2d 744 (Tex.Cr.App.1983). Involuntary manslaughter occurs when a person recklessly causes the death of another, V.T.C.A. Penal Code, Sec. 19.05(a)(1); criminally negligent homicide occurs when a person causes the death of another by criminal negligence, V.T.C.A. Penal Code, Sec. 19.07. A person acts with "recklessness" when he or she "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur"; a person acts with "criminal negligence" when he or she "ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." V.T.C.A.

Penal Code, Sec. 6.03(c) & (d). In *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Cr.App. 1975), we distinguished the two, as follows:

"Reckless conduct ... involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk. Criminal negligence ... involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof. At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk."

In *Moore*, supra, the Court reemphasized that the difference between "recklessness" and "criminal negligence" lies in whether the defendant perceives the risk of harm which his conduct creates.

This Court has frequently dealt with issues similar to the case at bar. Thus, a review of some of the holdings in previous cases is helpful.

In *Giles v. State*, 617 S.W.2d 690 (Tex.Cr.App.1981), the defendant confessed that he had pointed a gun at the deceased and it "went off." The panel opinion, authored by Judge Odom, found that:

"Since pointing a gun at a person raises the issue of criminally negligent homicide, i.e., as to whether the accused was unaware of the requisite risk that he ought to have been aware of ..., it also raises the issue of whether he was in fact aware of the risk and consciously disregarded it ..., i.e., it raises the issue of involuntary manslaughter. *Which of the two inferences regarding the accused's awareness of the risk is correct is a matter to be drawn from the circumstances by the jury. Dillon v. State*, 574 S.W.2d 92 (Tex.Cr.App.). It was therefore error to refuse to charge the jury on the lesser included offense of involuntary manslaughter so that the jury could decide whether to infer recklessness or intent to kill." [emphasis added]. *Giles*, supra at 691.

In *Schoelman*, supra, a panel opinion written by Judge Clinton, the defendant claimed the jury should have been charged on several lesser included offenses of murder, including involuntary manslaughter and criminally negligent homicide. The defendant testified:

"Q: Your intent was to point the gun at him and say, 'I want my ring,' is that correct?

A: Yes.

\* \* \* \* \* \*

Q: I know you didn't have to have any intent to fire it, you had the gun in your hand and you say it accidentally went of [sic], then you didn't pull the trigger, Mrs. Tillery [the victim] hit the gun, isn't that what you said?

A: She grabbed.

Q: And that caused the gun to go off?

A: That's correct.

Q: All right. But if you had intended to shoot Buford or anyone, all you had to do was pull the trigger?

A: Sir, I presumed that to be true. I never pulled the trigger on that gun, intentionally, in my life.

"However, later on, appellant insisted that she was not pointing the gun at anyone, it was 'kind of in the air,' she was not looking at the gun but in the eyes of Coe and, finally the concession: 'I do not know how it happened, sir. All I know is I was looking him straight in the eye. I did not see, I only felt.' " *Schoelman*, supra at 731–732.

It was held that since criminal negligence arises when one points a loaded gun at another, and since the distinction between involuntary manslaughter and criminal negligence depends solely on which of the two inferences regarding the accused's awareness of the risk is correct, both issues, "recklessness" and "criminal negligence," should have been submitted to the jury for resolution. *Schoelman*, supra at 734.

In *Salinas*, supra, the defendant testified that he had cocked the gun and was reach-

ing for the door knob when the gun accidentally discharged and the deceased was shot. Appellant further testified that he was barely touching the trigger and had not intentionally pulled the trigger nor aimed the gun at anyone. The panel opinion, authored by Judge McCormick, held that:

> "[W]e may presume that appellant was aware of the risk of injury or death by having a loaded cocked pistol and exhibiting it, although at the time it discharged he was not specifically aware of shooting the deceased. Therefore, appellant having been aware of the risk, his conduct was reckless and a charge on involuntary manslaughter should have been given." *Salinas,* supra at 746.

In the instant cause, the State's witnesses testified that prior to appellant's entrance, they heard a noise similar to the sound of a gun being cocked. Appellant then walked into the room with a rifle and a struggle ensued over its possession. The victim was shot shortly after she released her hold on the rifle. One witness testified that appellant held the rifle, level, and pointed in the direction of the victim. Appellant testified he took the rifle into the bedroom in order to exchange it for car keys. He testified he told his wife he would give her the gun if she would give him the keys. His wife immediately started pulling on the gun and when she turned it loose, it "went off." He stated he assumed the gun was unloaded, but did not check it and had not cocked it. He also testified he did not intend to kill his wife.

■ The sole issue at trial concerned appellant's intent. The State's position was that its evidence showed that appellant intentionally pointed the rifle at his wife knowing it was loaded and then knowingly and intentionally shot her. We find that the jury as the trier of fact could have reasonably rejected the appellant's testimony that he was unaware that the rifle was loaded; it could have reasonably believed the witness's testimony that the appellant cocked and pointed the rifle at the victim and thus could have inferred from such action that the appellant knew the rifle was loaded; and it also could have reasonably believed appellant's testimony that he did not intend to kill his wife. Accordingly, the jury could have reasonably concluded that appellant's action in pointing a loaded rifle at his wife in an attempt to persuade her to relinquish the keys to a car constituted a conscious disregard of "a substantial and unjustifiable risk."

Considering all of the evidence presented at trial and not solely the appellant's testimony as advocated by the opinion of the Court of Appeals, we find the holdings in *Giles, Schoelman,* and *Salinas,* supra, to be controlling. The trial court erred in refusing to instruct the jury on the law of involuntary manslaughter.

The judgments of the Court of Appeals and the trial court are reversed and the cause is remanded.