**Julius DREW, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–86–042–CR.**

Court of Appeals of Texas,
Austin.

Aug. 12, 1987.

Rehearing Denied Sept. 16, 1987.

Gerald Brown, Carroll, Brown & Hibbs, Temple, for appellant.

Arthur C. Eads, Dist. Atty., James T. Russell, Administrative Asst., Belton, for appellee.

Before GAMMAGE, ABOUSSIE and EARL W. SMITH[1], JJ.

GAMMAGE, Justice.

This is an appeal from a judgment convicting Julius Drew of the offense of attempted capital murder. The jury found Drew attempted to kill a police officer and assessed punishment at 50 years. We will reverse the trial court's judgment and remand the cause for a new trial.

Mark Jackson, a police officer in Temple, Texas, testified that in the early morning hours of April 12, 1985, he was patrolling a dirt road in the vicinity of Waters Dairy Road in Temple when he observed movement near a pile of trash. Jackson stated that he stopped his marked police vehicle and got out to investigate. The headlights of the police car were on, but Jackson stated that he did not turn on the overhead lights. He was dressed in a dark blue short-sleeved police uniform and was wearing a badge, but was not wearing a cap. Jackson testified that he observed a light green, older model GM car moving slowly without lights around the trash pile. He said that he went up to the right passenger window and, with the aid of his flashlight, saw Drew sitting in the driver's seat with nothing on below the waist and a female

---

1. Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code § 73.012 (Supp.1987).

sitting or lying on the back seat with her clothes draped around her.

Officer Jackson testified that he tapped on the front passenger window and asked for identification. He did not recall if he identified himself as a police officer. Jackson said that Drew was fumbling for his pants when the woman rolled down the window and asked, "Could you take me back to my car?" Drew stated that he would take the female back to her car and rolled up the window. Jackson testified that when the woman repeated her request for him to take her back to the car, he got in the front seat on the passenger side of the car and asked her what was wrong. He said that as he was kneeling in the front seat of the car, Drew attempted to start the car. Jackson said he told Drew not to start the car, at which time Drew jumped out of the car and ran.

Jackson testified that he pursued but was unable to catch Drew so he returned and escorted the woman to the backseat of the police car. He heard the woman say something and leaned inside the police car, at which time he heard a yell and felt a sharp blow to the right side of his face. Jackson testified that he turned around and wrestled a person he identified as Drew to the ground. Jackson admitted that he was considerably heavier than Drew, that he was on top of Drew as they wrestled on the ground and that he could have had his hand on Drew's throat during the struggle. Jackson testified further that when Drew continued to swing at him with a pocket knife, he told Drew to stop or he would shoot him. Jackson said that Drew did not stop and Jackson then shot Drew twice in the chest area.

Following the altercation, Jackson had surgery to repair a severed nerve in his jaw and a punctured lung. Drew's doctor testified that Drew will never be able to walk without the aid of a cane, crutches or wheelchair, and that he suffers from bladder and bowel dysfunction and is likely to suffer from sexual dysfunction.

Drew's version of the facts differs in some important respects. He testified that he and a woman were undressed and in the back seat of his parked car in a vacant field when they saw what appeared to be a flashlight approaching the car. He jumped in the front seat and attempted to drive away from the light. He claims that before the light reached the car, he ran from the car with his clothes, put his clothes on and returned to the car armed with a pocket knife. When he attempted to locate his female companion, he claims he was grabbed from behind by an unknown person much stronger than himself. Drew admitted poking the person with his knife but said that he did so out of fear for his life. Drew testified that it was pitch dark in the vacant field, that he had not seen what the person with whom he was wrestling was wearing and did not know that person was a police officer.

The defense elicited additional testimony to bolster Drew's testimony that he did not know Jackson was a police officer. Jackson testified that he did not turn on the overhead lights on the police car and that he approached Drew's car from around a pile of brush. Jackson further testified that he did not recall identifying himself as a police officer and that he was not wearing a hat with his dark blue uniform. There also was substantial testimony as to how dark it was at the scene. The headlights on the patrol car were shining away from where Drew's car was located, and Drew's car could not be seen from where the patrol car was parked. Jackson himself testified that he lost Drew in the darkness after Drew left the car. Drew testified that the headlights on his car were off and the dome light on his car was not working. The woman who was with Drew testified she heard a struggle outside the car but could not or did not see what was happening.

Drew was charged with intentionally and knowingly attempting to cause the death of Mark Jackson by stabbing and cutting him with a knife. The indictment further alleged that Mark Jackson was then and there a peace officer acting in the lawful discharge of an official duty and that Drew then and there knew that Mark Jackson was a peace officer. The jury was instruct-

ed on these elements of attempted capital murder and on the law of self defense. Drew requested but was denied an additional instruction on the lesser included offense of attempted murder. He brings two points of error complaining of the trial court's denial of his request.

■ In *Aguilar v. State,* 682 S.W.2d 556 (Tex.Cr.App.1985), the Texas Court of Criminal Appeals adopted the two-prong test set forth in *Royster v. State,* 622 S.W.2d 442 (Tex.Cr.App.1981), for determining whether a jury must be charged on a lesser included offense. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Aguilar, supra* 682 S.W.2d at 558; *Moreno v. State,* 702 S.W.2d 636, 640 (Tex. Cr.App.1986); *Cordova v. State,* 698 S.W.2d 107 (Tex.Cr.App.1985) *appeal dism'd and cert. denied,* — U.S. —, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986); *Bell v. State,* 693 S.W.2d 434 (Tex.Cr.App.1985) *Lugo v. State,* 667 S.W.2d 144 (Tex.Cr.App. 1984).

The first prong of the test has been met because attempted murder is clearly a lesser included offense of attempted capital murder. *See* Tex. Code Cr.P.Ann. art 37.09 (1981).

■ In deciding whether the second prong of the *Royster-Aguilar* test has been met, we must consider all the evidence raised at trial. If evidence from any source raises the issue and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Thomas v. State,* 701 S.W.2d 653, 656 (Tex.Cr. App.1985). Drew claims the second prong has been met because evidence was adduced at trial that he did not know Jackson was a police officer. Since such knowledge is a required element of attempted capital murder, Drew argues there is some evidence that if he is guilty, he is guilty only of the lesser offense of attempted murder. We agree. Drew's testimony together with all the circumstances presents a factual question as to a required element of

attempted capital murder—knowledge by Drew that Jackson was a police officer. Because this element distinguishes attempted capital murder from the lesser offense of attempted murder, Drew was entitled to have the issue determined by the jury, and the trial court erred in denying Drew's requested instruction.

The State argues that Drew was not entitled to the requested instruction because:

> ... Either the Appellant was attacked by an unknown assailant whom he stabbed in self defense as he testified, or he attacked a police officer knowing that the person was a police officer as testified to by Officer Jackson. The jury could not reasonably believe one part of one version of the different set of events and reject the other part.

In support of its argument, the State cites *Thomas v. State, supra;* and *Lindsey v. State,* 608 S.W.2d 230 (Tex.Cr.App.1980).

■ We find *Thompson v. State,* 521 S.W.2d 621 (Tex.Cr.App.1974) and *Lugo v. State, supra,* to be more on point. An argument similar to that before us was rejected by the Court of Criminal Appeals in *Thompson:*

> ... the State's contention is wrong because it ignores the proposition that the jury may accept or reject all or a part of a witness's testimony, and even though a part of that testimony is in conflict with or is contradicted by other evidence the jury may give credence to that part of the testimony.... It is also well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether it be strong, weak, unimpeached, or contradicted. [citations omitted]

*Thompson, supra* 521 S.W.2d at 624. This holding was reaffirmed in *Lugo, supra,* in which the Court of Criminal Appeals rejected the State's argument that a criminal defendant is not entitled to an instruction on a lesser included offense if testimony by the defendant negates any element of the lesser included offense. Once a defensive issue is reasonably raised by the evidence, regardless of whether the evidence is credi-

ble, controverted or conflicting, a criminal defendant has the right to have the jury under proper instruction, and not the court, decide that issue. *Lugo, supra* 667 S.W.2d at 147; *Moore v. State,* 574 S.W.2d 122, 124 (Tex.Cr.App.1978).

Because we sustain Drew's third point of error, we need not address the remaining points. The judgment of the district court is reversed and the cause is remanded for a new trial.