PD-0183-15

PD-0183-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/16/2015 8:34:47 PM
Accepted 2/18/2015 9:20:34 AM
ABEL ACOSTA
CLERK

PDR No. _____

_____

In the Court of Criminal Appeals Texas

_____

TREYVON RAYMOND WILLIAMS, Appellant

V.

THE STATE OF TEXAS

_____

On Appellant's Petition for Discretionary Review
From the First Court of Appeals,
Appeal No. 01-13-00660-CR,
On Appeal from the 400th District Court
Of Fort Bend County, Texas
Cause No. 12-DCR-060402

_____

PETITION FOR DISCRETIONARY REVIEW
FOR APPELLANT, TREYVON RAYMOND WILLIAMS

_____

Oral Argument Requested

Michael C. Diaz
20228 Hwy. 6
Manvel, Texas 77578
Telephone: 281-489-2400
Facsimile: 281-489-2401
Texas Bar No. 00793616

Attorney for Appellant

FILED IN
COURT OF CRIMINAL APPEALS

February 18, 2015

ABEL ACOSTA, CLERK

i

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. Rule 68.4 (a), appellant certifies that the following is a complete list of the trial court judge, all the parties to the judgment or order appealed from, and the names and addresses of counsel in the trial and on appeal:

Trial Court Judge:
The Honorable Clifford Vacek
Presiding Judge 400th District Court
Fort Bend County, Texas

Appellant:
Treyvon Raymond Williams

Counsel for Appellant:
Dallas C. Hughes
7322 Southwest Fwy Ste 1100
Houston, TX  77074

Michael C. Diaz (appeal)
20228 Hwy. 6
Manvel, Texas 77578

Counsel for the State of Texas:
John F. Healey Jr.-District Attorney
John Hawkins-Trial
Thomas Pfeiffer-Trial
John Harrity-Appeal
Fort Bend County, Texas District Attorney's Office
1422 Eugene Heimann Cir
Richmond, Texas 77469

# Table of Contents

Identity of judge, parties and counsel……………………………………………………ii

Index of Authorities…………………………………………………………………...v

Statement Regarding Oral Argument……………………………………………….vi

Statement of the Case…………………………………………………………...…vii

Procedural History of the Case………………………………...……………viii

Grounds for Discretionary Review One…………………………………………2

## GROUND ONE

<u>DID THE FIRST COURT OF APPEALS ERR IN AFFIRMING APPELLANT'S CONVICTION IN DETERMINING THAT A RATIONAL FACTFINDER COULD HAVE FOUND BEYOND A REASONABLE DOUBT AGAINST APPELLANT ON THE ISSUES OF SELF-DEFENSE AND DEFENSE OF A THIRD PERSON?</u>

Reasons to Grant Review in Support of Ground for Review…………………….2

Review is appropriate, under Tex. R. App. P. 66.3(f), because the Court Of Appeals has court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.

Argument and Authorities In Support Of Ground One………..…………..…2

## GROUND TWO

DID THE COURT OF APPEALS ERR IN AFFRIMING THE TRIAL COURT IN DENYING APPELLANT'S PROPOSED LESSER INCLUDED JURY INSTRUCTIONS, SPECIFICALLY FELONY DEADLY CONDUCT?

Reasons to Grant Review in Support of Ground for Review………………………8

Review is appropriate, under Tex. R. App. P. 66.3(c), because the Court Of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States;

Review is appropriate, under Tex. R. App. P. 66.3(d), because the Court Of Appeal has declared a statute, rule, regulation, or ordinance unconstitutional, or appears to have misconstrued a statute, rule, regulation, or ordinance; namely, TEX.CODE CRIM. PROC. art. 37.09.

Argument and Authorities In Support Of Ground Two………….……………..…...8

Prayer for Relief……………………………………….…………….11-12

Certificate of Compliance..……………………………………………...13

Certificate of Service…....………………………………………………13

Appendix ..…………………………………………………………..14

## INDEX OF AUTHORITIES

CASES:

*Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012)……………...…9-10

*Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991)………………….3

*Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)……………….....10

*Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011)………………………..10

STATUTES, CODES AND RULES:

Tex. R. App. P. 9.4(i)………….…………………………………………………... 13

Tex. R. App. P. 9.5………………………………...…………………………...13

Tex. R. App. P. 66.3(c)……………………………..…………………………...iv, 8

Tex. R. App. P. 66.3(d)……………………………………………...…iv, 8

Tex. R. App. P. 66.3(f)………………………………...……………………………...iii, 2

Tex. R. App. P. 68.4(a)……………………………………………………………..ii

Tex. R. App. P. 68.4(c)…………………………………………………….............vi

Tex. Penal Code §1.07…………………………………………………………...3

Tex. Penal Code §22.05……………………………………………………………..8-9

TEX.CODE CRIM. PROC. art. 37.09………………………….……………..iv, 9

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex. R. App. 68.4(c), counsel respectfully requests oral argument. Oral argument would be helpful because this case presents an issue that needs to be resolved by this Court. This appeal involves questions of law, questions of fact, public policy and procedure which cannot be adequately addressed, analyzed and evaluated through written communication alone. Oral argument is essential to emphasize the unique characteristics of these questions and to address the unforeseeable exigencies arising during the Court's consideration of this appeal.

## STATEMENT OF THE CASE

On May 21, 2012, Treyvon Raymond Williams, appellant, was indicted for murder. (CR 1 at 16). On June 4, 2013, appellant pled not guilty to the indictment. (CR 21 at 12). After a jury trial, the jury found appellant guilty of the charged offense and appellant was assessed a 70 year sentence in the Texas Department of Criminal Justice-Institutional Division. (CR 1 at 102).

The evidence, when viewed in the light most favorable to the verdict, does not appear to support a finding that any rational trier of fact, could have found Appellant guilty. The evidence from the Appellant's standpoint supports not only self-defense, but deadly force against another, as well as deadly force to protect a third party.

The argument for a lesser-included instruction for deadly conduct derives from Appellant's own statement.

On July 24, 2013, Appellant timely filed his notice of appeal. (CR 1 at 97).

This petition challenges these holdings.

## PROCEDURAL HISTORY OF THE CASE

On December 16, 2014, the First Court of Appeals affirmed Appellant's conviction. Williams v. State, No. 01-13-00660-CR, slip op. at 1-13, (Tex. App.-Houston [1st Dist.], December 16, 2014, pet. pending). On December 30, 2014, Appellant timely filed his motion for rehearing. The First Court of Appeals overruled and denied Appellant's motion for rehearing on January 15, 2015. On February 16, 2015, Appellant timely filed this petition for discretionary review with the Texas Court of Criminal Appeals. TEX. R. APP. P. 4.1 and 68.2.

PDR No. _____

_____

In the Court of Criminal Appeals Texas

_____

TREYVON RAYMOND WILLIAMS, Appellant

V.

THE STATE OF TEXAS

_____

On Appellant's Petition for Discretionary Review
From the First Court of Appeals,
Appeal No. 01-13-00660-CR,
On Appeal from the 400th District Court
Of Fort Bend County, Texas
Cause No. 12-DCR-060402

_____

PETITION FOR DISCRETIONARY REVIEW
FOR APPELLANT, TREYVON RAYMOND WILLIAMS

_____

To The Honorable Justices of the Court of Criminal Appeals:

Comes now Appellant, Treyvon Raymond Williams by, and through his
attorney of record, Michael C. Diaz, and files this petition for discretionary review
of the of the December 16, 2014, decision of the First Court of Appeals of Texas in
Williams v. State, No. 01-13-00660-CR, slip op. at 1-13, (Tex. App.-Houston [1st

Dist.], December 16, 2014, pet. pending), and would respectfully show the Court the following:

## GROUND ONE

**DID THE FIRST COURT OF APPEALS ERR IN AFFIRMING APPELLANT'S CONVICTION IN DETERMINING THAT A RATIONAL FACTFINDER COULD HAVE FOUND BEYOND A REASONABLE DOUBT AGAINST APPELLANT ON THE ISSUES OF SELF-DEFENSE AND DEFENSE OF A THIRD PERSON?**

### Reasons to Grant Review in Support of Ground for Review

Review is appropriate, under Tex. R. App. P. 66.3(f), because the Court Of Appeals has whether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.

### ARGUMENT AND AUTHORITIES IN SUPPORT OF GROUND FOR REVIEW ONE

In its December 16, 2014, opinion, the First Court of Appeals affirmed Appellant's conviction in determining that a rational factfinder could have found beyond a reasonable doubt against appellant on the issues of self-defense and defense of a third person.

This Court should review this ground and review is appropriate under Tex. R. App. P. 66.3(f), because the Court of Appeals has so far departed from the

2

accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.

In its opinion, the First Court of Appeals responded to Appellant's first point of error by stating that "the issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). When a jury finds the defendant guilty, there is an implicit finding against self-defense. Id. at 914. Although there is some evidence that appellant reasonably believed that deadly force was immediately necessary to protect himself or Andromida, other evidence demonstrates that a rational jury could have been persuaded to the contrary beyond a reasonable doubt. Notably, no weapon was found on Rico's person after he was shot, and Andromida testified that the black object taken from his body "could have been a shoe for all I know." Nor did any witness corroborate appellant's statement that an unknown person at the scene was carrying an assault rifle. Furthermore, as the exclusive judge of the facts, the jury was entitled to accept or reject defensive evidence. Id."

Appellant would respectfully remind this Court that "reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. *Tex. Penal Code §1.07.*

The Appellant's voluntary statement would seem to indicate that he held a reasonable belief, in that he was told on the day of the shooting that Desiray and Darian were going to jump them and shoot them. Appellant went over to Angela's for a baby shower and heard Desiray at the door asking for him. Desiray asked appellant where her stuff was and appellant asked Desiray where his stuff was. Appellant stated that Desiray and Darian had taken his clothes and shoes. Appellant sees Darian jump out of the car saying, "Are you ready to fight? Are you ready to fight?" It was at this time he sees Rico drive up with Shamarkcus and two bright skinned males he does not know. The tall, bright boy was trying to fight appellant first. Appellant took off his shirt to fight Rico. Desiray ran back to Angela's house to fight Andromida. The tall, bright skinned boy looked like he had an AK-47 because the barrel was skinny at the end. Appellant had a gun he had bought the day before for protection and he had it in his waistband. Appellant was scared for his life because he thought the bright skinned male had an AK-47 and that Rico had a gun. Appellant saw Rico running toward Desiray and Andromida with his hand down like he was holding a gun. Appellant started shooting and Rico got in the way as he was running. Appellant knows Rico to

4

hang out with the 103's, a gang, who are known to carry guns. Appellant has seen Rico with a gun before when they were playing dice. The tall, bright male was wearing a white mesh shirt with the sleeves cut off and black shorts. Appellant was also arguing with Darian who called them to come on back. Appellant saw 3 cars in front of Angela's house, Desiray's car, Rico's car and a Charger. (RR 3 at 160, State's exhibit 58).

In addition, the corroboration as to the Appellant's reasonable belief came from several witnesses who testified. The police were called out to a disturbance at Tameka's house. (RR 5 at 118). Tameka had asked Desiray to ask Darian to leave so the tension could die down. (RR 5 at 117). Tameka stated that there was a lot of tension in her house. (RR 5 at 116). Tameka stated that Desiray became mad and knocked a table over in the garage and cussed her out. (RR 5 at 117). Tameka realized that Desiray and Darian took clothes from Tevin's room after seeing them enter in Tevin's room with a garbage bag. (RR 5 at 121). Tameka also stated that Desiray made threats towards Tevin and the appellant. (RR 5 at 118). In addition, Tameka stated that Desiray was going to get Tevin jumped and get Rico to fight Tevin. (RR 5 at 114). Tameka knew that something was going to happen and it was going to escalate a little further. (RR 5 at 118).

Andromida testified that Angela, Aiereona, appellant and her went outside the front door and Desiray was hollering that she needed to speak with appellant. She further testified that the appellant became mad and said, "I don't have time for this. We ain't trying to cause no problems." In addition, Andromida observed 6 car loads of people, 20-25 people, mostly all black males, standing in her yard, in the driveway, and in front of her house in the street. The males were saying that they came to jump him. Andromida was not going to let it happen unless it was one on one. Furthermore, it should be noted that Andromida testified Rico and Darian were coming to help Desiray because Andromida had her on the ground, winning the fight and Desiray kept hollering for them. Only when Darian got close to the fight, Andromida heard the gun shots. Andromida saw Rico on the ground and an unknown person take something black from Rico's person and go to the second car behind Desiray and then he came back to where Rico was. (RR 5 at 159-197). Although Andromida could never say what the black item was, it could be assumed that it was a gun as appellant indicated to the police during his interview. (RR 3 at 160, State's exhibit 58).

Angela testified that a bunch of people were coming towards her house as if they were coming to fight appellant. She also testified that Darian ran towards Andromida and it was two on Andromida. Angela saw Rico run towards

6

Andromida before he got shot. (RR 5 at 198-222). This corroborates what the appellant said during his interview. (RR 3 at 160, State's exhibit 58).

Even the State's witness, Shamarkcus, testified that when Rico, Chris, Willie and he arrived at Beechaven, Desiray and Darian were already there in Darian's car. (RR 4 at 144). Other people started to show up at Beechaven, including a green Lexus, with black males. (RR 4 at 144). Shamarkcus testified the appellant pointed the gun in the direction of the crowd, where Rico, Darian and Desiray were standing and shot 3 or 4 times, however, at the time of the shooting, Rico was running over to stop the fight between Andromida and Desiray. (RR 4 at 155, 203). In addition, Shamarkcus testified that Willie Howse was also going toward and behind Rico. (RR 4 at 202). Again, this testimony corroborates what the appellant said during his interview with the police. (RR 3 at 160, State's exhibit 58).

The First Court of Appeals in its opinion, acknowledges that "there is some evidence that appellant reasonably believed that deadly force was immediately necessary to protect himself or Andromida." Furthermore, just because a gun was never found on Rico's person, or a gun was never observed at the crime scene, this alone should not negate Appellant's reasonable belief. It is undisputed that Andromida saw Rico on the ground and an unknown person take something black

7

from Rico's person and go to the second car behind Desiray and then he came back to where Rico was.

This evidence, when viewed in the light most favorable to the verdict, does not appear to support a finding that any rational trier of fact, could have found Appellant guilty. The evidence from the Appellant's standpoint supports not only self-defense, but deadly force against another, as well as deadly force to protect a third party.

## GROUND TWO

### DID THE COURT OF APPEALS ERR IN AFFRIMING THE TRIAL COURT IN DENYING APPELLANT'S PROPOSED LESSER INCLUDED JURY INSTRUCTIONS, SPECIFICALLY FELONY DEADLY CONDUCT?

### Reasons to Grant Review in Support of Ground for Review

Review is appropriate, under Tex. R. App. P. 66.3(c), because the Court Of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States;

Review is appropriate, under Tex. R. App. P. 66.3(d), because the Court Of Appeal has declared a statute, rule, regulation, or ordinance unconstitutional, or appears to have misconstrued a statute, rule, regulation, or ordinance; namely, TEX.CODE CRIM. PROC. art. 37.09.

### ARGUMENT AND AUTHORITIES IN SUPPORT OF GROUND FOR REVIEW TWO

The Court of Appeals incorrectly affirmed the trial court decision in not giving Appellant a jury instruction on deadly conduct.

8

A person commits the offense of deadly conduct if he knowingly discharges a firearm at or in the direction of:

(1) one or more individuals;

(2) or a habitation, building or vehicle and is reckless as to whether the habitation, building or vehicle is occupied. *Tex. Penal Code §22.05*

We employ a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense. See *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). The first step is a question of law, in which we compare the elements alleged in the indictment with the elements of the lesser offense to determine "if the proof necessary to establish the charged offense also includes the lesser offense." Id.

The Code of Criminal Procedure states that an offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

9

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense. *TEX.CODE CRIM. PROC. art. 37.09.*

The Court of Appeals was well aware that a lesser-included instruction on felony deadly conduct was requested by Appellant at trial. Furthermore, the Court acknowledged in its opinion that deadly conduct is a lesser-included of murder. In addition, the Court also acknowledged that the first prong was satisfied in determining if deadly conduct was a lesser-included offense. Moreover, the Court acknowledged in its opinion that, "the second step is a question of fact and is based on the evidence presented at trial. *Cavazos* at 383. Thus, a defendant is entitled to an instruction on a lesser-included offense "if some evidence from any source raises a fact issue on whether he is guilty of only the lesser, regardless of whether the evidence is weak, impeached, or contradicted." *Id*. "Although this threshold showing is low, 'it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). The standard may be satisfied "if some evidence refutes

or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Id*.

Regardless of the source or whether the evidence was weak, impeached or contradicted, the Appellant stated during the interview that he became scared and *just started shooting* and that Rico got in the way as he was running towards Desiray. (RR 3 at 160, State's exhibit 58). The argument for a lesser-included instruction for felony deadly conduct derives from Appellant's own statement in that he knowingly *just started shooting*. This supports that Appellant knowingly discharged the firearm at or in the direction of one or more individuals.

It is clear from the argument, authorities, and statements from the record that the Court of Appeals committed error in its judgment. The Court drew an incorrect conclusion from the facts of this case and failed to make a holding necessary to the proper disposition of the appeal and its holding was based upon a false premise.

PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant, Treyvon Raymond Williams, prays that this Court grant the Petition for Discretionary Review for Appellant, order briefing on this cause, and set it for submission at the earliest possible date. Moreover, upon submission and review of the appellate record and

the briefs and arguments of counsel, the Court find reversible error in the judgments of the First Court of Appeals in appeal number 01-13-00660-CR and of the 400th District Court of Fort Bend County, Texas, cause number 12-DCR-060402. In accordance with this Court's finding of reversible error, appellant also requests that the Court then issue its opinion and judgment reversing the judgments of the First Court of Appeals and the 400th District Court of Fort Bend County, Texas, remand this cause to the 400th District Court of Fort Bend County, Texas, assess all costs of the appeal against Appellee, and order execution of its judgment in accordance with its opinion.

Respectfully submitted,

/s/Michael C. Diaz
Michael C. Diaz
20228 Hwy. 6
Manvel, Texas 77578
Telephone: 281-489-2400
Facsimile: 281-489-2401
State Bar No. 00793616
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. 9.4 (i) 3, I hereby certify that the foregoing document, Appellant's Petition for Discretionary Review, filed on February 16, 2015, has 3645 words, based upon the word count under Microsoft Word.

/s/ Michael C. Diaz
Michael C. Diaz
20228 Hwy. 6
Manvel, Texas 77578
Telephone: 281-489-2400
Facsimile: 281-489-2401
Texas Bar No. 00793616
E-mail: mjoeldiaz@sbcglobal.net
Attorney for Appellant

## CERTIFICATE OF SERVICE

In accordance with TEX. R. APP. P. 9.5, I, Michael C. Diaz, certify that a true and correct copy of the foregoing Petition for Discretionary Review has been served by hand delivery, to the Fort Bend County District Attorney's Office, 1422 Heimann Circle, 2nd Floor, Richmond, Texas 77469, on this the 16th day of February, 2015.

/s/Michael C. Diaz

Michael C. Diaz

APPENDIX



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00660-CR

————————————

**TREYVON RAYMOND WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 400th Judicial District Court
Fort Bend County, Texas
Trial Court Case No. 12-DCR-60402**

---

## MEMORANDUM OPINION

A jury convicted Treyvon R. Williams of murder and found that he used a deadly weapon in the commission of the crime. TEX. PENAL CODE ANN. § 19.02. The jury assessed punishment at 70 years' confinement. Williams appeals, contending that in light of evidence showing his actions were legally justified, the

evidence was insufficient to support a conviction for murder. He also argues that the trial court erred by denying his proposed jury instructions on the lesser-included offenses of manslaughter, criminally negligent homicide, and deadly conduct.

We conclude that a rational jury could have rejected the justification defenses. We further conclude that the proposed instructions on lesser-included offenses were correctly refused because Williams's evidence was that he acted intentionally but with legal justification. Accordingly, we affirm.

## Background

In the weeks prior to the charged offense, Darian Chaney and Desiray Johnson stole a variety of items from Tevin Johnson and appellant Treyvon Williams. Tevin and appellant retaliated by stealing items from Darian and Desiray.

On the day of the offense, Darian, Desiray, complainant Ron "Rico" Chaney, and several other people searched for appellant to recover the stolen items. Darian, Desiray, and Rico went to the home of Angela Jones, and appellant came out of the house, indicating that he wanted to fight. The group decided there would be a one-on-one fight in which appellant was allowed to choose his opponent; he chose to fight Rico. By this time, multiple carloads of people had arrived at the house, and a crowd had formed around the yard.

2

Neither appellant nor Rico struck each other during the fight, and the two separated quickly when another fight broke out between Desiray and another woman, Andromida Norris. Soon, the fight between Desiray and Andromida ended as Rico walked towards the women to break them up. At the same time, appellant walked to a green Lexus, retrieved a gun, and fired three or four shots in the direction of Rico and Desiray. One of the bullets struck Rico in the head, killing him. Appellant fled in the green Lexus.

Later that night, after discussion with his mother and counseling with her pastor, appellant returned to the scene to turn himself in to the police. After he was taken to an interview room by the police and read his *Miranda* warnings, appellant gave a video-recorded statement.

In the recorded statement, appellant initially stated that he believed someone else at the scene had an assault rifle and that he had accidentally shot Rico while trying to shoot the other individual. Later in the interview, appellant stated that he shot Rico because he thought Rico intended to hurt Andromida, who was fighting with Desiray in the yard.

Appellant was charged with murder. Following trial, he was convicted and sentenced to 70 years' confinement.

## Analysis

On appeal, appellant challenges the sufficiency of the evidence supporting his conviction and the trial court's refusal to charge the jury on lesser-included offenses.

## I.      Sufficiency of the evidence

Appellant argues in his first issue that the evidence at trial was legally insufficient to support his conviction for murder because a rational factfinder could not have properly rejected his theories of self-defense.

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We must defer to the responsibility of the factfinder to fairly resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from the facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Williams*, 235 S.W.3d at 750. In so doing, we may not reevaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams*, 235 S.W.3d at 750. This standard applies equally to circumstantial and direct evidence. *Laster v. State*, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02. "[A] person is justified in using force against another when and to the degree the actor reasonably believes force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). Deadly force is justified to protect the actor against another's use or attempted use of unlawful deadly force and to prevent another's imminent commission of murder, kidnapping, sexual assault, or robbery. *Id.* § 9.32(a). A person is justified in using deadly force against another to protect a third person if, under the circumstances the actor reasonably believes them to be, the actor would be justified in using force against the other under section 9.32 to protect himself against the unlawful deadly force he reasonably believes to be threatening the third person, and the actor reasonably believes that his intervention is immediately necessary to protect the third person. *Id.* § 9.33.

The defendant bears the initial burden to produce evidence supporting a justification defense. *Zuliani v. State*, 97 S.W.3d 589, 594–95 (Tex. Crim. App. 2003). Once the defendant produces some evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion does not require the State to produce evidence; it requires only that it prove its case

beyond a reasonable doubt. *Id*.; *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Thus, to convict a defendant of murder after he has raised the issue of self-defense, the State is required to prove the elements of the offense beyond a reasonable doubt and to persuade the jury beyond a reasonable doubt that the defendant did not kill in self-defense. *Zuliani*, 97 S.W.3d at 594; *McClesky v. State*, 224 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Appellant contends that the jury could not have found against him beyond a reasonable doubt on the issues of use of deadly force in defense of himself and in defense of a third person. *See* TEX. PENAL CODE ANN. §§ 9.32, 9.33. Appellant asserts that his own statements that he saw somebody in the crowd with an assault rifle, coupled with other witness testimony that Rico, Desiray, and Darian were at the house to "jump" him, justify his acts as deadly force in defense of himself. He further argues that a jury could not have properly rejected evidence that his use of deadly force was justified to protect Andromida, who testified that when the shots were fired, Rico and Darian were moving toward her to help Desiray because she had her on the ground. Andromida further stated that she saw an unknown person take something black from Rico's person after he was shot, which appellant contends is evidence that Rico had a gun. Appellant also relies on other bystander

testimony indicating that Rico was moving toward Andromida when the shots were fired.

The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). When a jury finds the defendant guilty, there is an implicit finding against self-defense. *Id.* at 914. Although there is some evidence that appellant reasonably believed that deadly force was immediately necessary to protect himself or Andromida, other evidence demonstrates that a rational jury could have been persuaded to the contrary beyond a reasonable doubt. Notably, no weapon was found on Rico's person after he was shot, and Andromida testified that the black object taken from his body "could have been a shoe for all I know." Nor did any witness corroborate appellant's statement that an unknown person at the scene was carrying an assault rifle. Furthermore, as the exclusive judge of the facts, the jury was entitled to accept or reject defensive evidence. *Id.*

Viewing the evidence in the light most favorable to the verdict, a rational factfinder could have found beyond a reasonable doubt against appellant on the issues of self-defense and defense of a third person. *See Saxton*, 804 S.W.2d at 914; *Williams v. State*, 226 S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We overrule appellant's challenge to the sufficiency of the evidence.

## II. Lesser-included offense instructions

In his second issue, appellant asserts that the trial court abused its discretion and committed reversible error when it refused to instruct the jury on the lesser-included offenses of manslaughter, criminally negligent homicide, and deadly conduct.

We employ a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *See Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). The first step is a question of law, in which we compare the elements alleged in the indictment with the elements of the lesser offense to determine "if the proof necessary to establish the charged offense also includes the lesser offense." *Id*. The Code of Criminal Procedure states that an offense is a lesser-included offense if:

> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. art. 37.09.

The second step requires us to consider whether there is some evidence that would permit a rational jury to find that, if the appellant is guilty, he is guilty only of the lesser offense. *Cavazos*, 382 S.W.3d at 383. The second step is a question of fact and is based on the evidence presented at trial. *Id*. Thus, a defendant is entitled to an instruction on a lesser-included offense "if some evidence from any source raises a fact issue on whether he is guilty of only the lesser, regardless of whether the evidence is weak, impeached, or contradicted." *Id*. "Although this threshold showing is low, 'it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.'" *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). The standard may be satisfied "if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Id*.

Here, the indictment alleged the elements of murder under all three definitions in the Penal Code:

> (b)    A person commits an offense if he:
>
>> (1)    intentionally or knowingly causes the death of an individual;

(2)      intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3)      commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE § 19.02(b).

### a. *Manslaughter and criminally negligent homicide*.

Appellant asserts that it was error for the trial court to refuse to instruct the jury on manslaughter and criminally negligent homicide. Both manslaughter and criminally negligent homicide are lesser-included offenses of murder. *Martinez v. State*, 16 S.W.3d 845, 847 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (manslaughter); *Miller v. State*, 177 S.W.3d 177, 182 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (criminally negligent homicide). But a defendant's testimony that he acted in self-defense precludes a finding that there is some evidence in the record that appellant is guilty only of manslaughter, because a fact finder cannot find both that a defendant acted recklessly and that he acted in self-defense. *Martinez*, 16 S.W.3d at 848; *see also Alonzo v. State*, 353 S.W.3d 778, 782 (Tex. Crim. App. 2011) (noting precedents in which "[t]he very reason for denying the manslaughter charges was that the defendants' evidence was that in

committing the homicide they acted intentionally in self-defense, not merely recklessly").

The record also lacks evidence that appellant is only guilty of criminally negligent homicide. That offense requires that a person act with criminal negligence, which involves "inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof." *Lugo v. State*, 667 S.W.2d 144, 147–48 (Tex. Crim. App. 1984); *see also* TEX. PENAL CODE § 6.03(d) (defining criminal negligence); *id.* § 19.05 (offense of criminally negligent homicide). Thus, for a defendant to be entitled to a jury charge on criminally negligent homicide, the record must contain "some evidence" that the defendant did not intend the resulting death or know that it was reasonably certain to occur. *Miller*, 177 S.W.3d at 182. If such evidence is present, the record must contain evidence showing that the defendant was unaware of the risk. *Id.* Here, there is no evidence in the record that appellant did not intend to cause death or that he did not know it was reasonably certain to occur when he fired three or four bullets into a crowd. Nor does the record contain evidence that appellant was unaware of that risk. To the contrary, intentional conduct was implicit in appellant's self-defense testimony. *Cf. Martinez*, 16 S.W.3d at 848.

b.    ***Deadly conduct***.

11

Finally, appellant asserts that it was error for the court to refuse to instruct the jury on the offense of deadly conduct. The offense of deadly conduct can be committed in two ways. A person commits the misdemeanor version of the offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. TEX. PENAL CODE § 22.05(a), (e). The felony version of deadly conduct occurs if a person knowingly discharges a firearm at or in the direction of one or more individuals. *Id*. § 22.05(b)(1). Thus, under these facts, felony deadly conduct satisfies the first prong of the lesser-included test because it was included in the proof necessary to establish the offense of murder. *See* TEX. CODE CRIM. PROC. art. 37.09(1); *Ortiz v. State*, 144 S.W.3d 225, 233–34 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Appellant requested an instruction that described felony deadly conduct. On appeal, however, he advances no argument to support that instruction. Instead, he merely asserts, without reference to any supporting legal authority, that "when Appellant shot the gun at Rico and/or Darian, his act was reckless." A legal argument that an instruction on misdemeanor deadly conduct should have been given does not support reversal on appeal when the request at trial asked for an instruction on felony deadly conduct. *See* TEX. R. APP. P. 33.1(a), 38.1(i); *Green v. State*, No. 14-07-00827-CR, 2009 WL 1875572, at *10 (Tex. App.—Houston [14th Dist.] Jun. 30, 2009, pet. ref'd) (mem. op., not designated for publication)

12

(finding briefing waiver when appellant argued for a felony deadly conduct instruction based on evidence that only related to the misdemeanor offense); *Morris v. State*, No. 14-06-00564-CR, 2007 WL 2089290, at \*4 (Tex. App.—Houston [14th Dist.] Jul. 24, 2007, no pet.) (mem. op., not designated for publication) (determining that request for lesser-included instruction of misdemeanor deadly conduct was inadequate to preserve error on failure to give instruction on felony deadly conduct).

\*     \*     \*

Because appellant has failed to establish that he was entitled to a lesser-included offense instruction for manslaughter, criminal negligence, or deadly conduct, we overrule his second issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

13